## AMERICAN NATIONAL INSURANCE COMPANY *v.* WALTERS

No. 40430          March 18, 1957          93 So. 2d 616

*Deavours & Hilbun,* Laurel; *Watkins & Eager,* Jackson, for appellant.

618

*E. K. Collins, Pershing B. Sullivan*, Laurel, for appellee.

Kyle, J.

The appellee, Mrs. Vinnie Walters, recovered a judgment for the sum of $2,000 in the Circuit Court of Jones County against the appellant, American National Insurance Company, for the face value of four policies of Industrial Life Insurance issued by the appellant to the

appellee's son, Hilmon L. Walters; and from that judgment the appellant prosecutes this appeal.

The policies were dated May 3, 1954. The appellee was named as beneficiary in each of the policies. Each of the policies provided insurance in the amount of $250; but each of the policies also provided that the insurer would pay double the amount of the insurance to the beneficiary if the insured died prior to the policy anniversary immediately preceding his sixty-fifth birthday, or the amount of the insurance if the insurer died on or after such anniversary, "provided that at the death of the insured no premium is more than four weeks overdue." Each policy provided that it should be kept in force by the payment of weekly premiums on or before each Monday from the date thereof until the death of the insured, and "if lapsed, the policy may be reinstated in accordance with the policy provisions entitled Reinstatement." Each policy provided for a grace period of four weeks for the payment of each premium except the first. The reinstatement clause in each of the policies provided as follows:

"REINSTATEMENT. Unless this policy has been surrendered for its Cash Value or any non-forfeitable extended term insurance has expired, this policy may be reinstated at any time within three years after the due-date of the premium longest overdue subject to the presentation of evidence satisfactory to the Company of the insurability of the Insured. Payment of the premiums overdue and the payment or reinstatement of any indebtedness on the policy at date of default will be required."

Each of the policies also contained a provision as follows:

"The printed provisions on this and the three following pages of this policy together with any endorsements signed by the Company's President or Secre-

tary make the entire contract. No other person can change this contract or waive any of its provisions, and any change or waiver, to be effective, must be a part of such an endorsement.''

Photostatic copies of the policies were attached to the plaintiff's declaration.

The record shows that the insured failed to pay the premiums on the policies after November 7, 1955, and the four weeks' grace period expired sometime during the month of December. On January 5, 1956, the insured left the home of his mother near the City of Laurel and went to Texas to look for work. On January 16, 1956, he entered the Veterans' Hospital in Houston, Texas, and on January 31, 1956, he underwent a serious operation. His family in Laurel, Mississippi, were notified, and the appellee, his mother, went to Houston, Texas, immediately to be with her son during his serious illness. Her daughter, Mrs. Hicks, and her son also went with the appellee to Texas. On arrival they found that the insured had cancer of the throat.

On February 1, 1956, Mrs. P. L. Holifield, a sister of the insured, who resided a short distance outside the City of Laurel, went to the appellant's office in the City of Laurel, for the purpose of ''checking on'' the status of her brother's insurance. She was referred to J. F. Waller, the staff supervisor of appellant's Laurel office. Mrs. Holifield testified that she told Mr. Waller that she had come to check on the insurance, and that Mr. Waller stated that he would have to check the books, and after doing so he told her that it was O. K. and that ''there's $22.40 due now.'' Mrs. Holifield testified that she told Mr. Waller that she would come back the next day and pay the $22.40. Mr. Waller testified that Mrs. Holifield asked him what it would take to reinstate the insurance, and he told her it would take $22.40, if proof satisfactory to the company of insurability was also

furnished. Mr. Waller did not at that time give Mrs. Holifield any forms for the insured to fill in for the purpose of having the insurance reinstated and proving insurability. On February 2, 1956, Mrs. Holifield returned to the appellant's Laurel office and brought with her $22.40 in cash. Mr. Waller was out of the office at that time, and Mrs. Holifield talked to Miss Ruth Covington, who appears to have been the secretary-bookkeeper in the office, and gave her the $22.40. Miss Covington then gave Mrs. Holifield a "Conditional Receipt", which was in words and figures as follows:

"Form 230 A Rev. 7/52

CONDITIONAL RECEIPT        American National
                          Insurance Co.
                          Galveston, Texas

"This deposit is received upon the express condition that no liability is assumed by the Company on account thereof, unless the above mentioned policies are in force on a premium paying basis on the date of this receipt. Otherwise this deposit or portion thereof attributable to policies not in force on a premium paying basis, will be refunded upon request.

Received from Mrs. P. L. Holifield a deposit of $22.40 which (subject to the conditions indicated) is to apply in payment of premiums on the following policies:

Type  Policy No.  Full name of Insured  Amt. Paid
Ind.              Hilmon Walters        22.40
    for premiums due
2/2/56  Laurel, Miss.    s/Ruth Covington
  Date      District       Company Representative."

Mrs. Holifield accepted the "Conditional Receipt" and left the office. Miss Covington testified that the money was placed on what was called the "Revival and Transfer Book", and was still on that book, waiting for

an O. K. from the Home Office as to what to do with it, at the time of the trial.

Miss Covington testified that when Mr. Waller returned to his office on February 3 she told him that Mrs. Holifield had paid the $22.40 and that she had given her a "Conditional Receipt" therefor and had entered the payment in the Revival and Transfer Book. Mr. Waller instructed Miss Covington to try to get in touch with Mrs. Holifield on the telephone. Miss Covington stated that she tried to get Mrs. Holifield on the telephone immediately, but was unable to do so, and it was not until Monday, February 6, that she talked to Mrs. Holifield on the telephone. She told Mrs. Holifield at that time about the information that they would have to have to reinstate the insurance.

Mrs. Holifield admitted that she had a telephone conversation with Miss Covington on February 6, but denied that Miss Covington told her at that time about any forms to be filled out. On February 6, Mrs. Holifield, with her father and other members of the family, went to Texas on account of the illness of the insured. On February 7 a letter was written by the appellant's Laurel office to Mrs. Holifield sending forms for her brother to fill out, in order to apply for reinstatement of the policies, and to furnish proof of insurability. On February 8 the insured died of cancer. He was 45 years of age at the time of his death.

There is a conflict in the evidence as to what was said on February 1 when Mrs. Holifield went to the Laurel office "to check on the insurance." Mr. Waller testified that Mrs. Holifield asked him what it would take to reinstate the insurance, and that he told her that it would take $22.40 if proof satisfactory to the company of insurability was also furnished. Miss Covington testified that Mr. Waller talked to Mrs. Holifield in her office, and that Mr. Waller told Mrs. Holifield that,

"there may be some forms to fill out, that he would have to be in good health—in other words, he would have to have proof that he was capable of good health and insurability." Miss Covington was asked on cross-examination why Mr. Waller did not give Mrs. Holifield the forms at that time. Her answer was that Mrs. Holifield did not have the money at that time, and that would have to go with the forms. Miss Covington was also asked why she did not give Mrs. Holifield the forms on the day that she came to the office and paid the $22.40. Her answer was, "I was under the impression that Mr. Waller had talked to her and explained what was necessary to be done."

Mrs. Holifield testified that the first time she had ever seen Mr. Waller was when he came to her home with the agent whom he succeeded, and that she had seen him several times since then in the appellant's office when she was paying premiums. She stated that Mr. Waller was the head man down there at the office. On cross-examination Mrs. Holifield denied that she knew that her brother had cancer of the throat at the time she paid the premiums. She stated that she had not been notified of the operation at that time and knew nothing about his condition. Mrs. Holifield denied that Mr. Waller told her that the policies had lapsed. She admitted that she knew the contents of the Conditional Receipt because she had read it. She stated that when she went back to pay the $22.40 they accepted the money and gave her a receipt, and there was nothing said about forms to be filled out before the policies could be reinstated. She admitted she received the forms that had been mailed to her to be filled out for reinstatement of the policies after her brother's death, and that she did not return them to the Laurel office.

It was brought out on the cross-examination of J. F. Waller that he had issued a conditional receipt similar

to the receipt mentioned above on November 7, 1955, covering the last payment which had been made on the policies prior to the payment of February 2. Waller stated that the form of receipt referred to was used whenever a premium was paid by a person who did not have the policyholder's premium receipt book with him at the time of the payment.

E. K. Collins, one of the attorneys for the appellee, testified that he discussed Mr. Walter's claim with Mr. Waller on the telephone sometime after the death of the insured. He asked Mr. Waller whether they were going to pay the claim. Mr. Waller did not request that any forms be filled out at that time. Collins identified and offered in evidence a letter dated April 10, 1956, addressed to him as attorney written by C. E. Mott from the Home Office of the appellant at Galveston, Texas, in which Mr. Waller was referred to as staff supervisor. In the letter the company denied liability on the policies and agreed to refund the $22.40 which had been paid to the staff supervisor by Mrs. Holifield, upon request.

The first point argued by the appellant's attorneys as ground for reversal of the judgment is that the court erred in refusing to grant the appellant's request for a peremptory instruction at the conclusion of all of the testimony, on the ground that the proof failed to show that J. F. Waller, the staff supervisor of the Laurel office, had authority to waive the provisions of the policies that any reinstatement of a lapsed policy was "subject to the presentation of evidence satisfactory to the company of the insurability of the insured."

We think that the court erred in refusing to grant the peremptory instruction requested by the appellant.

The proof shows that the policies had lapsed on account of the failure of the insured to pay the premiums falling due after November 7, 1955, and that the four weeks' grace period had expired several weeks before

Mrs. Holifield called at the Laurel office to ascertain the status of the policies. The insured had a right to have the policies reinstated upon the payment of the premiums overdue at any time within three years after the due date of the premium longest overdue; but the right to reinstatement was subject to the condition that the insured should present to the company evidence satisfactory to the company of the insurability of the insured at the time such reinstatement was applied for. The insured had notice of the reinstatement provisions of the policies, which were plainly stated in the policies. Mrs. Holifield had notice of the conditions stated in the receipt issued to her on February 2, when she paid to Miss Covington the $22.40. Mrs. Holifield admitted that she read the receipt, which stated that the deposit was received upon the express condition that no liability was assumed by the company on account thereof, unless the policies were in force on a premium-paying basis on the date of the receipt. The policies were not in force on a premium-paying basis on that date, and the acceptance of the $22.40 by the staff supervisor in charge of the Laurel office under the conditions stated did not in our opinion effect a reinstatement of the lapsed policies, or constitute a waiver by the company of the forfeiture which had already resulted from the nonpayment of the premiums. Waller testified that he was out of his office the day Mrs. Holifield paid the $22.40 to Miss Covington, and that upon his return to the office the next day he undertook to contact Mrs. Holifield immediately for the purpose of having her furnish proof satisfactory to the company of the insurability of the insured. The duty to furnish that proof rested upon the insured. No such proof was furnished, and in view of the fatal illness of the insured, which resulted in his death five days later, it is clear that no such proof could have been furnished. Waller testified that the $22.40 was deposited in a local

bank to the credit of the Laurel District Account, to await instructions from the Home Office.

There is no proof in the record to show that the staff supervisor, or the cashier and bookkeeper, in the company's Laurel office, had authority to reinstate the policies after the lapse of the policies because of the failure of the insured to pay the premiums, or to waive the provisions of the policies which required that evidence satisfactory to the company of the insurability of the insured be furnished as a condition precedent to the right of reinstatement; and there is no proof in the record to show a ratification by the company of the conditonal acceptance of the premiums by Waller.

■■ ■ A general agent ordinarily has authority to waive a ground for avoidance of forfeiture of an insurance policy. But it was not shown that Waller was a general agent of the company. A mere collecting agent has no power to modify a contract of insurance, or to waive a forfeiture. New York Life Ins. Co. v. O'Dom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A 583; Travelers' Fire Ins. Co. v. Price, 169 Miss. 531, 152 So. 889.

In New York Life Insurance Co. v. O'Dom, supra, the Court held that a stipulation in a policy of insurance that no agent has power to modify the terms of the contract, or waive its conditions, is notice to the insured of the limited authoritiy in these respects and under such a stipulation the insured cannot rely upon any actual conduct of the agent as constituting a modification or waiver.

The facts in the O'Dom case were very similar to the facts in the case that we now have before us. The record in that case showed that John W. O'Dom had issued to him a term policy in the sum of $5,000 on January 26, 1909. The policy was to run ten years, provided, of course, that the annual premiums were promptly paid. The annual premiums were to be paid on January 18 of

each year. The premiums were payable in advance at the home office, or to an agent of the company upon the delivery of a receipt signed by an executive officer of the company and countersigned by an agent. The policy provided for a grace period of one month. The policy further provided that, "No agent is authorized to waive forfeitures, or make, modify or discharge contracts, or extend the time of paying a premium." The second full premium of $170.85 became due January 18, 1910. Written notices of the due date of the premium were mailed to the insured on December 28, 1909, on January 23, 1910, on February 3, 1910, and on February 13, 1910. The premium was not paid on or before February 18, 1910, when the thirty days' grace period expired. O'Dom died on February 20, 1910. The plaintiff contended that the insurance company waived the requirements of the contract, which called for the full annual premiums on or before February 18, 1910, and, further, that the defendant agreed with the insured that it would accept a quarterly premium on February 21, or February 18, in lieu of the whole amount within the time called for by the policy. The evidence showed that on February 20 the son of the insured had mailed a check to the Jackson office of the company for $66.10, and that the check had been received by the Jackson office on February 21. The evidence also showed that O'Dom, the insured, was sick on February 20, and had been sick for a week or more, and that he died at 8:30 o'clock that night.

A. C. Wilson, cashier of the company at the branch office at Jackson, testified that he was the only cashier having an office in the State of Mississippi; that the Jackson branch office included, and had jurisdiction over all of the counties in Mississippi, except 17 counties in the northern part of the state, which were under the supervision of the Memphis branch office, and four counties on the Coast, which were under the supervi-

sion of the New Orleans branch office. Wilson testified that he had never sent to Mr. O'Dom's son any papers to change from an annual to a quarterly premium. Wilson testified that he was authorized to make collection of premiums and delivery of receipts to the policy holders within the counties of the Jackson branch district; that the receipts for the collection of premiums were sent to the Jackson office, to be countersigned by him, as cashier, before the same could be delivered to the policy holders; that the notices relative to the payment of premiums were mailed from the Jackson branch office; that another part of his duties was to receive the original policies from the company, have a record made of them, and then send them to the soliciting agent to be delivered by the soliciting agent to the policyholder. Wilson stated that another duty which he was expected to perform was to keep up with the policy holders, to send them notices not to let their policies lapse, and that he sent notices to Mr. O'Dom, the insured, on January 23, February 3, and February 13.

The question presented to the court in that case was whether Wilson, the cashier, had any power or authority to waive a forfeiture, and whether the insured was misled by Wilson, and if so was the company in any way estopped by the acts or declarations of Wilson, the cashier. The contention of the appellee was that the stipulation in the policy, "no agent is authorized to waive forfeitures, or make, modify, or discharge contracts, or extend the time of paying the premium," is void, and that Wilson, the cashier, had such powers and duties as authorized him to waive the forfeitures. The Court held that Wilson, the cashier, had no authority to extend the time of payment of premiums beyond the days of grace allowed in the policy, or to receive a quarterly premium after the policy had lapsed. And

the Court in its opinion, after summarizing the evidence, said:

"There is no evidence at all which either directly or indirectly, remotely or otherwise, shows that either Wilson, or any other person connected with the Jackson office, has any authority to issue policies of insurance, or to make any contract of insurance, or to extend the time of payment of any premium, or to change or modify any contract, or that any custom or course of dealing had existed in any way conferring any such power upon him or any other person connected with the Jackson branch, unless such power can be inferred from the evidence above stated.

"The burden of proof is upon him who asserts it to show either a direct authorization of the agent, or by proving such facts or circumstances, or such a course of conduct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority. If one invests another with real authority, he is bound by reason of the actual power conferred. If, however, he clothes him with apparent authority, he is bound, because he has induced others to deal with him as an agent. The one rests upon a fact; the other upon a supposed fact. But before the alleged principal is precluded from denying the existence of the supposed fact, it is necessary that the other party should show that he was misled, not by the alleged agent, but by the principal. An analytical examination of the adjudged cases will show that such is the predicate upon which such conclusions are drawn. Another principle is that, although one person has apparent, as contradistinguished from real, authority to act for another, yet if third persons dealing with an agent know, or in contemplation of law are charged with knowledge, that such person was not authorized to do or to perform the partic-

ular act, then such third persons cannot be heard to say that such agent was acting within the scope of his authority.''

The Court in its opinion in the O'Dom case stated that most of the cases relied upon by the appellee in that case were cases where the agent was the general agent of the company, or where, by the conduct of the parties, and the custom and the course of business, the insured had the right to rely upon the acts and statements of the agent, and that the conclusions in some instances were based upon statutes which made the party receiving or collecting premiums the general agent of the company. Turning then from the authorities relied upon by the appellee, the Court said:

''We find that the best-considered and the decided weight of authority is that a mere collecting agent has no power to vary, alter, or modify a contract of insurance, or to extend the time of payment, especially where the notice of the agent's authority is brought home to the other party. * * *

''We see no reason why a corporation, which necessarily contracts through agents, but may have agents of superior or inferior authority, should not stipulate, in any contract executed in its behalf, that its provisions can be varied by no notice or representations not brought home to the actual knowledge of one of its principal officers, nor any waiver not authorized by them. The stipulation in the policy that 'no agent has power to modify the terms of the contract, or waive its conditions, is notice to the insured of the limited authority in these respects, and under such a stipulation the insured cannot rely upon any actual conduct of the agent as constituting a modification or waiver.' Such is the statement of the rules as laid down in 25 Cyc. 861, and such is the generally accepted rule, * *.''

In the case of Travelers' Fire Ins. Co. v. Price, 169

Miss. 531, 152 So. 889, the Court held that a soliciting and collecting agent of an insurance company was without power to modify a contract of insurance or waive the conditions of the policy, and that an alleged waiver of the sole and unconditional ownership and public conveyance for hire clauses in an automobile fire and theft policy by a soliciting and collecting agent without written indorsement on the policy was ineffective, and not binding on the insurer. The Court also held in that case that Section 5196, Code of 1930 (Section 5706, Code of 1942), making a soliciting agent the agent of an insurance company, was applicable only to acts of the agent before and up to and including the consummation of the insurance, and after its consummation to what takes place in the examination and adjustment of a loss, and that as to all other matters and things, the principles of the common law governed. The Court in its opinion in that case said:

"It should be borne in mind that the waiver claimed in this case was not through any act or conduct on the part of appellant's general agency, J. H. Johnson & Co., Inc., but through a mere soliciting and collecting agent employed by the latter. The applicable principles of the common law were very fully discussed and laid down in New York Life Ins. Co. v. Odom, 100 Miss. 219, 56 So. 379, Ann. Cas. 1914A, 538. * * *.

"Appellee either knew or should have known—she was affected with notice—of the sole and unconditional ownership and the public conveyance for hire clauses in her policy, and that the soliciting and collecting agent had no right, under the plain language of the policy, to waive those clauses, and that such a waiver amounted to nothing, would not be binding on appellant. Appellant, therefore, had the right to stand on those clauses. The result is appellant was entitled to a directed verdict."

In Saucier v. Life & Casualty Ins. Co. of Tennessee, 189 Miss. 693, 198 So. 625 (1940), the Court again had under consideration Section 5196, Code of 1930 (Section 5706, Code of 1942), and the Court said that the manifest purpose of the statute was "to enable the state to effectually supervise insurance companies and their agents," and that the words in the statute, "as to all the duties and liabilities imposed by law", refer not to duties and liabilities that grow out of the contract of insurance, such duties and liabilities being determined by provisions of the contract itself, but to duties and liabilities imposed on insurance companies and their agents by law outside and independent of the provisions of the contract of insurance.

In St. Paul Mercury & Indemnity Co. v. Ritchie, 190 Miss. 8, 198 So. 741, the Court held that, under the general law of agency, no agent or representative of the indemnity company other than those named in the employer's liability policy had authority to modify or enlarge the liability of the company under the policy, in the absence of proof of special authorization so to do.

The record in the case that we have here shows that Waller was only a staff supervisor in charge of the Laurel office. There is no evidence in the record which shows, either directly or indirectly, that Waller or any other person connected with the Laurel office had any authority to issue policies of insurance, or to make any contract of insurance, or to change or modify any contract of insurance, or that any custom or course of dealing had existed, which indicated in any way that such power had been conferred upon Waller or any of his staff assistants.

■■ ■ The reinstatement clause in each of the four policies sued on in this case showed plainly the conditions which had to be met by the insured to effect a reinstatement of the policy after its lapse. One of those

conditions was that "evidence satisfactory to the company of the insurability of the insured" should be presented. It is not claimed that such evidence was presented either to the company or to the staff supervisor of the Laurel office, or that such evidence could have been presented at the time the overdue premiums were paid or at any time thereafter. The policies showed that neither Waller nor Miss Covington had authority to waive any of the provisions of the policies, and the issuance of the conditional receipt by Miss Covington to Mrs. Holifield for the $22.40 did not effect a waiver of the proof of insurability requirement in the reinstatement clauses of the policies. The proof of insurability requirement in the reinstatement clause was an important part of the insurance contract, and only the company or a duly authorized agent of the company could waive that requirement.

For the reasons stated above, the judgment of the lower court is reversed, and a judgment will be entered here in favor of the appellant.

Reversed and judgment rendered in favor of the appellant.

*McGehee, C. J.* and *Hall, Lee* and *Holmes,* JJ., concur.