H. B. CUMMINGS, Appellant,

v.

NEW ENGLAND INSURANCE COM-
PANY, Appellee.

No. 17574.

United States Court of Appeals
Fifth Circuit.

May 15, 1959.

Rehearing Denied June 22, 1959.

Landman Teller, Vicksburg, Miss., T. H. Campbell, Jr., Yazoo City, Miss., Oscar P. LaBarre, Vicksburg, Miss., John B. Loomer, Yazoo City, Miss., Teller, Biedenharn & Rogers, Vicksburg, Miss., for appellant, H. B. Cummings.

Elizabeth Grayson, Thomas H. Watkins, Jackson, Miss., James D. Thames, Vicksburg, Miss., for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment entered for the insurance company notwithstanding the jury's verdict in favor of the assured Cummings. The jury's verdict was set aside by the trial court because he found, as a matter of law, that the policy was suspended at the time of the fire because of an increase in hazard not agreed to by the company.[1]

---

1. The provision relating to increased hazard is as follows:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring.

(a) while the hazard is increased by any means within the control or knowledge of the insured; or

(b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; * * * *"

The appellee insurance company supports the action of the trial court on the ground stated, but also contends that it should have prevailed on other grounds as well. Principal among these is its contention that no insurance had ever been effected on these premises at all.

■ Turning first to the trial court's action, we must conclude that it erred in entering the judgment n. o. v. This is so because the circumstances giving rise to this defense presented at most a fact question for the jury and the issue was by it resolved in favor of the assured.

Briefly stated, the facts[2] necessary to an understanding of this issue are:

Cummings had operated the Tenderloin Restaurant outside Yazoo City for several months. There was evidence that he operated profitably while he sold liquor and had some slot machines on the premises, but began losing money when these activities were discontinued. On approximately September 17th, while in a confused state on account of drinking heavily, he telephoned his manager and told him to close and lock the place up. He did not then determine when or if he would reopen. The utilities were left connected and the jury could find that a "defective" hot water heater was left connected and burning. A fire destroyed the premises some ten days later, during which time Cummings had not visited the property. There was no evidence as to the cause of the fire. The nature of the defect in the heater was not established. On this point the trial court stated as follows:

"* * * He left no one in attendance at the place and did not visit the place himself at all after that until after the fire occurred. There was a defective gas heater in the building and this defective gas heater was left burning in this unused place of business, with no one to watch it. The insured, Cummings, knew that the gas heater was defective, being one that was

changed from a butane gas system to natural gas system, and knew that they had been having trouble with it. He knew that the place had been locked up with the gas left on. When he did this he was not sure whether he would open again or not, but thought probably he would and that the closing was only temporary. This was a dangerous situation to have left the place in, with no one to watch it or guard it, and was such a change as to substantially increase the risk, and it was, therefore, the duty of the insured to correct that condition or else his policy would be suspended during the time of such increased hazard. An insured must take steps to abate an increased hazard, whether it is created by him or another, if it is known to him. See Goldman v. Piedmont Fire Ins. Co., 3 Cir., 198 F.2d 712." New England Ins. Co. v. Cummings, 164 F. Supp. 553, 557.

In light of the fact that the policy expressly provided for suspension in case of vacancy for more than 60 days, and because it is not shown conclusively that the vacancy of ten days under the stated circumstances imported any greater hazard than if the proprietor had merely taken a ten day vacation, or that the heater was any more dangerous on the tenth day than it would have been any night or week end when the place was closed, it was not permissible for the trial court to hold as a matter of law that this vacancy increased the hazard. The issue was put to the jury and its finding on the point must stand.

■ Considering next the question of coverage, we agree with the trial court that a policy was in effect at the time of the closing.

There was testimony from which the jury could find early in September Cummings had telephoned the local general agent of appellee and told him he want-

2. A fuller discussion of the facts can be found in the reported opinion of the trial court at 164 F.Supp. 553.

ed $9,000 insurance on the contents of this restaurant and that the agent informed him that he would issue a policy. Cummings testified in a deposition, introduced by the insurance company on the trial: "Let's put this way. He told me I was covered for $9,000.00." [3] The agent testified on the trial: "I told him I was going to provide him coverage."

No policy had been issued by the New England Insurance Company at the time of the fire, but there was in the agent's possession a form of "Memorandum of Insurance, New England Insurance Company of Springfield, Mass." signed by Andrews, the agent. This form contained the following language:

"In consideration of the provisions and stipulations therein or added thereto and of the premium above specified, this company for the term of one year at noon standard time, at location of property involved, to an amount not exceeding the amount above specified, has insured Mr. Cummings upon the contents of the one-story frame and plaster building, approved roof, Highway 49W, Yazoo City, Mississippi."

However, the printed language of the form contained this language:

" * * * is furnished simply as a memorandum of said policy [there was a blank space for a policy number not filled in] as it stands at the date of issue thereof and is given as a matter of information only and confers no rights upon the holder and imposes no liability upon the Company."

But at the top of the form, immediately under the caption quoted above, the agent had typed in the words: "Insurance Binder." Andrews testified that he had picked out a policy form with a number assigned to it intending to use it for the Cummings coverage, but he laid it aside until he got the rate for the building and it was taken up and used by someone else in his office. He wrote the rating bureau for the rate and when that agency requested further description he wrote Cummings for it. He testified that Cummings phoned and gave the description, which he wrote down, but which he did not communicate to the rating bureau. No rate was given and no charge was actually made against Cummings prior to the fire.

■■ We concur in the view of the trial court that the failure to discuss the amount of the premiums under the circumstances here set out would not prevent the binder from becoming effective. Nor was the absence of a rate. The Mississippi Rating Bureau determines the rate, and the course of dealing between the parties warranted a finding that the policy was ordered and would be delivered at the proper rate and for cash or on credit extended by the Andrews' agency. Failure to pay a premium or failure to deliver the policy are not decisive of the existence of insurance. Scottish Union & National Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9. It has been held in Camden Fire Ins. Ass'n

---

3. On direct examination Cummings testified as follows:

"Q. Will you tell the Court and Jury whether Mr. Andrews, the agent here, agreed to write the $9,000 insurance for you? A. Yes, sir.

"Q. In September of 1955? A. Yes, sir, Mr. Andrews did.

"Q. What did he agree to cover you for? A. $9,000.

"Q. What kind of insurance was that to be? A. Fire and extended coverage.

"Q. Were you going to pay the premium? A. Yes, sir.

"Q. Did you agree to pay the premium? A. Yes, sir.

"Q. Did he ever tell you what the premium was? A. No, sir.

"Q. Has he ever told you yet? A. No, sir.

"Q. Have you always stood ready to pay the premium? A. Yes, sir.

"Q. Will you do it now? A. Yes, sir.

"Q. Did you tell Mr. Andrews everything he asked you to tell them? A. Yes, sir.

"Q. With reference to that insurance? A. Yes.

"Q. Did you tell it to him correctly? A. Yes, sir."

v. Koch, 216 Miss. 576, 63 So.2d 103, that a general agent for an insurance company may waive any provision of the policy. See also Rivara v. Queen's Insurance Co., 62 Miss. 720. We think it is clear that this general agent merely used a form designed by the company for use as a memorandum of an existing policy and transformed it into a binder of insurance by the typewritten insertion at the top of the document.

Appellant claims here that the Mississippi statute, Sec. 5719, Miss. 1942 Code, forbidding any insurance company to issue any fire insurance except in writing does not make void any oral insurance agreement. This question has not been passed on by the Mississippi Supreme Court. If an oral contract of insurance is valid in Mississippi, then clearly there was a valid contract here. The Company would be bound when the oral agreement between Andrews and Cummings was followed by Andrews making the memorandum on the New England form, which he signed as its agent. Clearly Cummings would not be bound by any language contained in the memorandum which was never brought to his attention. The trial court felt that the oral agreement was not of itself sufficient under Mississippi law. We need not decide this point, because we conclude that the memorandum, construed as it must be in light of the patent ambiguity, in favor of the insured, stands for the policy.

The description was sufficient because the property could be readily identified; the rate was to be fixed by the rating bureau, and a policy had been selected by the company's agent embracing all the terms of the coverage.

We have carefully considered the contention by appellee that the verdict was demanded because of a failure of the appellant to prove the amount of the loss. A close reading of the record discloses a maximum degree of indifference on the part of the insured, but it also discloses sufficient proof of contents and value to warrant submission of this issue to the jury.

We find no merit in the remaining contentions of appellee.

The judgment is Reversed and the case Remanded to the trial court for the vacation of the judgment n.o.v. and for the entry of judgment on the verdict of the jury.