Cosmopolitan Insurance Company *v.*
Capitol Trailer & Body, Inc., et al.

No. 42381 October 15, 1962 145 So. 2d 450

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson,
for appellants.

*Pierce & Waller,* Jackson, for appellees.

LEE, P. J.

Jackson Food Service, Inc., and Capitol Trailer & Body, Inc., instituted their suit in the Circuit Court of the First Judicial District of Hinds County against William P. Hicks, Forest Insurance Agency, Inc., Cosmopolitan Insurance Co., and Commercial Underwriters, Inc., on an insurance binder, alleged to cover property damage to a certain commercial trailer. There was a verdict for the plaintiffs and a judgment in their favor against all of the defendants in the sum of $6,692.03. From the judgment entered, Cosmopolitan and Commercial Underwriters only appealed.

Jackson Food Service, on July 27, 1960, for the sum of $30,000, purchased from Capitol Trailer & Body, Inc., two new refrigerated trailers. It paid $2,000 in cash, and executed its promissory note and conditional sales contract, payable in thirty-six monthly installments to secure payment of the aggregate balance of $33,880. Capitol Trailer & Body and its financing company required that the trailers should be insured.

Luther Stevens, President of Jackson Food Service, testified that he sought to place the required insurance with William P. Hicks of Hicks Insurance Agency, as he had previously had that company to write several policies for him. He admitted, on cross-examination, that he did not ask what company the insurance would be placed with, and that Hicks did not tell him at the time where it would be placed; and that, at no time, was a binder or policy of any kind delivered to him or his company. In fact, he said that he had never seen the binder until the day before the trial. He admitted that neither he nor his company at any time made any payment of premium therefor. He said that, about August 20, 1960, one of the trailers was badly damaged. When he called to report the loss, Hicks gave assurance that he would take care of it. Then it was that Hicks told him that the insurance was with Cosmopolitan and Commercial Underwriters. It developed that the alleged binder was subsequently located in the Jackson Food Service file in the office of Capitol Trailer & Body. Stevens, claiming to know Hicks' signature, said that the signature on the binder was that of William P. Hicks. On cross-examination, he admitted that, on September 29, 1960, he executed an affidavit, with the material allegations as follows:

"I was advised at the time of delivery that the Insurance coverage on said trailers had been placed with Mr. William P. Hicks of Forest Insurance Agency, Inc., Jackson, Mississippi. At a later date, I asked Mr. Hicks if he had written this coverage and was told by him that a request had been sent in for the coverage and that he was awaiting receipt of the necessary policies for delivery. I asked Mr. Hicks what Company he was placing this coverage with and was told that it was through a General Agent, Commercial Underwriters, Inc. of Winston-Salem, North Carolina and that same would be written in an unlicensed company writing busi-

ness in the State of Mississippi on a non-admitted basis. He further stated that he did not represent a company that would write this type of coverage that was licensed in the State of Mississippi.''

W. D. Box, Deputy Insurance Commissioner, testified to correspondence between the office of the Insurance Commissioner and Harold R. Wilson, an alleged attorney for Commercial Underwriters, to the effect that the premiums on fourteen insurance policies handled during a part of 1960 by Commercial for Forest Insurance Agency had not been fully and promptly paid. But, he admitted on cross-examination, that neither Jackson Food Service nor Capitol Trailer & Body appeared in this list. He further admitted that neither Commercial Underwriters, Inc., nor Cosmopolitan Insurance Co., was a licensed agent or insurer in the state; that William P. Hicks was licensed to place non-admitted insurance; but that Forest Insurance Agency had no such license at that time. He further said that William P. Hicks had never complied with the requirements of the Insurance Department, nor with Sec. 5705-02, Code of 1942, Rec., as amended, with reference to the surplus line of insurance available from non-admitted companies in connection with this matter. He further said that there was no showing that either Hicks or Forest Insurance Co., obtained from the Insurance Commissioner a certificate that he or they were authorized to represent or do business for Cosmopolitan or Commercial Underwriters.

William P. Hicks did not testify. Neither did the plaintiffs offer any evidence to show that the fourteen insurance policies, mentioned above, or any of them, were signed by William P. Hicks or Forest Insurance Agency, Inc., for Commercial Underwriters or Cosmopolitan Insurance Co., or that they had been authorized by such companies to do so, or that such companies

had ever acquiesced in the acts of Hicks and Forest Insurance Agency in doing so.

The binder, introduced by the plaintiffs, was apparently written upon a form of Commercial Underwriters, Inc. It was dated July 26, 1960, and showed Jackson Food Service as insured, Cosmopolitan Insurance Co., as insurer, and Forest Insurance Agency, Inc., as agent. The estimated annual premium was shown to be $1,370, payable upon receipt and delivery of policy. It was signed Commercial Underwriters, Inc., by William P. Hicks, Forest Insurance Agency, Inc., with the stated coverage and described vehicles.

At the close of the evidence for the plaintiffs, the requested peremptory instruction by Commercial and Cosmopolitan was overruled.

A. S. Groves, President of Commercial, testified that his company is not itself an insurer. It acts as agent for several companies, one of which is Cosmopolitan. Its only business with William P. Hicks was in early 1960 when he acted only as a broker, that is, he could submit proposed risks for acceptance or rejection by Commercial. These risks were such as he could not place in one of his regular companies, licensed to do business in Mississippi. In such a case, Hicks would send the application, together with the necessary information. Commercial would then accept the risk or reject it. Hicks had no authority or choice as to where the insurance would be placed; and only Commercial could issue the contract of insurance. Cosmopolitan never had any agreement with Hicks as a result of Commercial's dealings with him. Neither Hicks nor any other broker was ever authorized to issue a binder. While the binder is a form which is used by Commercial, the witness did not know how Hicks came into possession of it. Commercial made no agreement to supply such forms. It never had any request from Jackson Food Service or Capitol Trailer & Body to write a policy

on the trailers. He could recall only one time, namely, about the middle of September 1960, after the trailer accident, when Hicks was in the office of the company. Besides, where the broker has all of the necessary information, there is no need to issue a binder. Commercial has no charge on its books against either Hicks or Forest Insurance Agency for a premium on this risk. It has never received any payment from anyone as a premium thereon. It never knew anything about a wreck until September 1960, some time after it occurred; and it never heard of a binder until it received a copy thereof in September 1960, after the wreck occurred on August 20, prior thereto.

At the close of the evidence, the appellants presented separate requested peremptory instructions to find for them, but these were refused. They have assigned, and now argue, that the court should have sustained these requests for the reason that there is no competent evidence in the record to show that the alleged agent, who signed the insurance binder, was the agent of either of the appellants or that he had authority to sign the binder.

■■■ There is, of course, no conflict in the decisions of this Court on the well-recognized principle that declarations of an alleged agent off the witness stand cannot be testified to by others to show agency and its scope, ■■■ although a witness can testify from the witness stand about his agency just as any other witness. Riechman-Crosby Co. v. Dinwiddie, 117 Miss. 103, 77 So. 906; Foye Tie & Timber Co. v. Nicholas, 128 Miss. 709, 91 So. 395; Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495; Columbus & Greenville Ry. Co. v. Miss. Clinic, 153 Miss. 29, 120 So. 203; McCaskey Register Co. v. Swor, et al., 154 Miss. 396, 122 So. 489; Cue Oil Co. v. Fornea Oil Co., Inc., 208 Miss. 810, 45 So. 2d 597; Sparkman v. Hardy, 223 Miss. 452, 78 So. 2d 584; J. R. Watkins

Co. v. Welborn, 143 Miss. 527, 138 So. 2d 296; City of Jackson v. Bridges, 143 Miss. 646, 139 So. 2d 660.

 █ Consequently, statements out of court by William P. Hicks as to his agency for Commercial Underwriters or Cosmopolitan, or the extent thereof, if he in fact did so, were not admissible.

Stripped of alleged statements of Hicks, inadmissible if made, Stevens applied to Hicks for insurance. No policy or binder was ever delivered to him or his company. On some unknown date, Edward Mabry, bookkeeper and secretary-treasurer of Capitol Trailer & Body, Inc., found the binder in this case in the file of Jackson Food Service, although he did not put it there. There was no proof that anybody else ever got a copy of it. Besides, Stevens did not see it until the day before he was testifying.

This Court in New York Life Insurance Company v. O'Dom, 100 Miss. 219, 56 So. 379, said: "The burden of proof is upon him who asserts it to show either a direct authorization of the agent, or by proving such facts or circumstances, or such a course of conduct, as by implication it can be presumed that the agent was acting within the real or apparent scope of his authority."

In Germania Life Insurance Company v. Bouldin, 100 Miss. 660, 56 So. 609, the Court said: "The powers possessed by agents of insurance companies, like those of any other corporation or of an individual principal, are to be interpreted in accordance with the general law of agencies. No other or different rule is to be applied to a contract of insurance than is applied to other contracts. The agent of an insurance company possesses such powers only as have been conferred verbally or by the instrument of authorization, or such as third persons had a right to assume that he possesses under the circumstances of each particular case." See

also American National Insurance Company v. Walters, 230 Miss. 616, 93 So. 2d 616.

In Cue Oil Company v. Fornea Oil Company, Inc., 208 Miss. 810, 45 So. 2d 597, the Court said: ''It is elemental that an agent of limited authority can be created. * * * The burden is on the claimant to show the authority of the agent.'' (citing authorities)

In American Bankers' Insurance Company v. Lee, 161 Miss. 85, 134 So. 836, the Court reiterated and reaffirmed certain general principles stated in Germania Life Insurance Company v. Bouldin, supra, and pointed out the fact that the then Sec. 5196, Code of 1930, now Sec. 5706, Code of 1942, Rec., defining who is an agent in this state, does not alter the general law of agency, and unmistakably adhered to the recognized distinction between a mere soliciting or special agent and an agent clothed with such authority as by implication would bind the principal for his acts. The opinion said: ''* * * the bare fact of a special agent soliciting the contract is not of itself sufficient to meet the burden of proof placed upon the insured by the law, to show that the principal had held this agent out as having authority to make for it a binding contract of insurance; * * *.'' Just as that case said that there was nothing in that record to lead a reasonable man to believe that the special agent in that case was the alter ego of the insurance company, so the Court may very well aptly say that there is nothing in the present record to lead a reasonable man to believe that either Hicks or Forest Insurance Agency, Inc., was the alter ego of either Commercial Underwriters or Cosmopolitan Insurance Company.

Appellees cite a number of cases, but they put great reliance on the case of New England Insurance Co. v. Cummings, 164 F. Supp. 553, and the subsequent reversal of the case styled Cummings v. New England Insurance Co., 266 F. 2d 888, by the Circuit Court of

Appeals. The plaintiff, in the first instance, sought a declaratory judgment to cancel the claim of the defendant on account of an alleged binder, issued to him by the plaintiff's general agent. The general agent, Andrews, himself testified that it was his intent to cover the contents of the building against fire by the binder, and at the time he issued it, although the premium rate had not been definitely determined. However, there was evidence of a subsequent increase in the hazard. The trial judge submitted the cause to the jury, which returned a verdict for Cummings. But, the motion of the plaintiff for a judgment notwithstanding the verdict was sustained on the ground that, while the binder was valid and effective, the defendant's substantial increase of the risk of fire by his acts had relieved the plaintiff from the payment of anything. The Circuit Court of Appeals, after a summary of the facts, concluded that it was not permissible for the trial court to hold as a matter of law that the vacancy of the premises had increased the hazard. The opinion agreed with that of the trial court that the policy was in effect at the time of the closing of the restaurant. It recited the fact that Cummings telephoned the local general agent of the insurance company and told him he wanted $9,000 insurance on the contents and that the agent informed him that he would issue the policy. Besides, the opinion says: "The agent testified on the trial: 'I told him I was going to provide him coverage'." In that case, both the insured and the general agent of the insurer had an agreement and understanding that the fire coverage would be provided. Besides, they both testified to this fact in the trial. But, in the case now before the Court, while President Stevens testified that he applied for the insurance and he produced a binder with William Hicks' signature as agent thereon, Hicks did not testify; and Hicks' alleged statements out of court as to his acts as an agent of the appellants were not ad-

missible. The distinction between the two cases is clear and obvious.

The undisputed evidence in this case is that Hicks was a mere broker. He could only submit applications for the surplus line of insurance for acceptance or rejection. He had no authority to issue policies of any kind. As stated, there was no showing whatever that either he or Forest Insurance Agency, Inc., signed any one of the fourteen insurance policies, testified to by the Deputy Insurance Commissioner, for Commercial Underwriters or Cosmopolitan Insurance Co. Stevens undoubtedly had notice of the limited nature of Hicks' connection with Commercial Underwriters because, in his affidavit of September 29, 1960, he said that, at the time of the delivery of the trailers, he understood that the coverage had been placed with Hicks. Later, when he inquired as to the status, Hicks told him that ''a request had been sent in for the coverage * * * through a General Agent, Commercial Underwriters, Inc.'' and that ''he did not represent a company that would write this type of coverage that was licensed in the State of Mississippi.''

The requested peremptory instructions should have been sustained. Consequently, the judgment is reversed, and a judgment will be entered here for the appellants.

Reversed and judgment here for appellants.

*Kyle, Ethridge, Rodgers* and *Jones, JJ.,* concur.