**COASTAL RUBBER & GASKET CO., INC., Plaintiff,**

v.

**GULF INSURANCE COMPANY, Defendant.**

**Civ. A. No. S88–0787(R).**

United States District Court,
S.D. Mississippi, S.D.

July 1, 1992.

Karl R. Steinberger, Brett K. Williams, Colingo, Williams, Heidelberg, Steinberger & McElhaney, Pascagoula, Miss., for plaintiff.

Robert T. Gordon, Jr., Heidelberg & Woodliff, Jackson, Miss., for defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

On March 9, 1992, a bench trial was had in the above styled civil action which arises from a complaint for declaratory judgment and other relief filed by Coastal Rubber & Gasket Company, Inc. (hereinafter "Coastal") against the defendant Gulf Insurance Company (hereinafter "Gulf"). Coastal seeks an adjudication that it was an insured of Gulf from December of 1971 until September of 1975 under a standard special multi-peril policy with a products liability endorsement.

## Facts

Coastal was incorporated on October 30, 1972, and is a corporation organized and existing under and by virtue of the laws of the State of Mississippi. It was established as an industrial rubber supply company located in Moss Point, Mississippi.

The shareholders of Coastal from October 30, 1972 through September 23, 1974, were Horace W. Hebert, Clayton Storment, Pearl Storment and C.G. Melville, Jr. During this period, these individuals were President, Vice–President, Secretary–Treasurer, and Vice–President, respectively, of the corporation. Melville ceased being a shareholder and officer from September 24, 1974 through September 14, 1975. James M. Carter became a shareholder and Vice–President. Also, during that period Mississippi Rubber & Specialty Company, Inc. (hereinafter "Mississippi Rubber") acquired 6.25% of the shares of Coastal.

Mississippi Rubber is a Mississippi corporation which was incorporated on November 21, 1963, as an industrial rubber distributor and fabricator located in Jackson, Mississippi. President and sole shareholder of Mississippi Rubber during the period September 14, 1971 through September 14, 1975 was Horace Hebert.

Horace Hebert died in September of 1987.

Gulf is a Missouri corporation which, since 1941, has been authorized to transact business in Mississippi, and from 1970 until 1975 was a stock company which sold special multi-peril (SMP) policies in Mississippi, as well as workers' compensation, automobile, and fire and casualty policies.

Mutual Insurance Agency, Inc. (hereinafter "Mutual") is, and was during the

period 1970 through 1975, a Mississippi corporation located in Jackson, Mississippi.

From October 23, 1970 to November 1, 1975, Mutual was an agent for several insurance companies, one of which was Gulf, and was authorized by Gulf to sell insurance policies, including SMP policies, issued by Gulf in Mississippi. Mutual was assigned agency number 6238.

Richard Hartung was, at all times relevant, the President of Mutual and was authorized to sell insurance for and on behalf of Gulf in Mississippi.

On February 28, 1980, a fire occurred at the premises of Coastal completely destroying all of its records. Also, pursuant to Gulf's records retention policy, any of Gulf's records which might tend to support or defeat Coastal's allegations of coverage have been destroyed.

Mr. Hartung predeceased the trial on the merits; however, his deposition was made an exhibit to the record.

### Discussion

The primary contention of Coastal is that it was an additional insured under SMP policies which Mississippi Rubber had with Gulf during the years 1971 through 1975.

More particularly, Coastal seeks to establish that it was so insured under Gulf's SMP policy number 1718145, effective September 14, 1971 through September 14, 1975, and number 2215386, effective September 14, 1974 through September 14, 1975.

Due to the absence of any of the aforestated policies, or any copies thereof, not only must Coastal establish that such policies existed, but, also it must establish the limits, terms, provisions, definitions, limitations, and exclusions of the alleged policies. This also must be done by clear and convincing evidence. See *Williams v. Evans*, 547 So.2d 54, 57 (Miss.1989), and *Bradley v. Nall*, 505 So.2d 1062, 1064 (Ala.1987).

The plaintiff's case for its contention that Coastal was an additional named insured on Mississippi Rubber's SMP policy issued by Gulf is to a very large extent dependent upon the testimonies of Richard Hartung, Pearl Storment, and James Carter. As these individuals were the only ones directly involved in the day-to-day business of Mutual and Coastal during the relevant period whose testimony was obtainable, the Court begins its analysis with a summary of their respective recollections.

### C. Richard Hartung

Beginning in 1965 or 1967 when he approached Horace Hebert regarding the purchase of insurance, Hartung knew Hebert personally and professionally for over 25 years and as of the date of the deposition of Mississippi Rubber and Coastal were clients of Mutual.

Regarding the inception of coverage for Coastal, he recalled that in 1971 or 1972, Hebert advised him that he was opening up an operation on the Coast and upon being so notified, Hartung recalled that Mutual added coverage to the Mississippi Rubber policy.

As to the specific type of insurance which Mississippi Rubber had in place in 1971, and to which he added Coastal, Hartung testified that it was an SMP policy with Gulf which continued in place until 1974 when it was replaced by a similar policy with Zurich Insurance Company.

Regarding the payment of premiums, it was Hartung's recollection that Mississippi Rubber paid all premiums to Mutual which, in turn, remitted the same to Gulf.

Referring to Mutual's records, as set out in Plaintiff Exhibit P–27, Hartung explained that Mississippi Rubber was initially covered for the period September 14, 1971 to September 14, 1974 under Gulf's SMP policy number 1718145. He further noted that the initial annual premium of $290.00 was in December of 1971 increased by $367.00, retroactive due to the addition of Coastal as an added insured and an increase in contents to $60,000.00.

Testifying to the meaning of notes made by another individual who was not available as a witness, Hartung was adamant that the terms "additional premium liability coverage added" could only indicate liability coverage for an additional business location.

One more increase in the premium for policy number 1718145 of $179.00 was noted as due to an increase in contents at an undisclosed location for the third year of the policy period.

Continuing with Exhibit P–27, Hartung testified that a new policy number 2215386 was entered into covering Mississippi Rubber and Gulf beginning on September 14, 1974, which, after an adjustment, had a yearly premium of $833.00.

Exhibit P–27, as explained by Hartung, indicates that Gulf's policy number 2215386 was terminated after one year in September of 1975, and replaced with SMP policy number 7122597 issued by Zurich Insurance Company for the policy period September 14, 1975 to September 14, 1978. The annual premium for this policy initially was $1,823.00 and upon a rate correction was reduced to $1,254.00.

Although Hartung was unequivocal that during the foregoing transactions Coastal was an insured, the only mention of Coastal in Exhibit P–27 is that dated September 1977 stating "credit transfer to Coastal Rubber to clear number four." This entry, according to Hartung, appeared to indicate that Mutual maintained a separate account for Coastal before September 1977; however, he was unable to elaborate or to produce any separate accounts for Coastal.

Regarding the limits of coverage under the two Gulf SMP policies, Hartung, testifying with reference to plaintiff's Exhibit P–28, stated that under each the liability coverage was $300,000.00.

Regarding his agency status, Hartung characterized himself as an independent agent who represented several companies, and at the time of the deposition he stated that Mutual's agency contract, and thus his own agency relationship, had terminated in 1975 or 1976. He further testified that Mutual, in order to add Coastal to a Mississippi Rubber policy, would have had to request Gulf to do so.

*Pearl Storment*

Mrs. Storment during the 1970s as part of her responsibilities with Mississippi Rubber would see all insurance policies and take steps to have them filed.

She portrayed her rule in insurance matters as that of liaison between Hebert and Hartung and while she stated that she checked all of the policies as they came in, during the period 1971 to 1975 she admitted that she did not make the decisions as to coverage and could not recall any specific instance of her being personally involved with placing or obtaining insurance coverage for Coastal during said period.

She stated that all insurance billing for Coastal for 1972 to 1975 or 1976 was handled through Mississippi Rubber and that from 1972 until some time in 1974 she was primarily responsible for the books, records, and accounts of Coastal. She did not, however, know what companies were involved or the periods, amounts, or types of insurance which were issued during the period in question.

Regarding the list, if any, containing the breakdown of invoices which would have included insurance premiums paid for Coastal by Mississippi Rubber, she testified that such were lost when Mississippi Rubber's safe was burglarized.

Mrs. Storment stated that prior to October 30, 1972, Coastal had no previous existence either independently or as a division of Mississippi Rubber; neither was there any business at the Moss Point location or at any other location which became Coastal. She also stated that for several months prior to choosing to locate in Moss Point, Coastal's incorporators considered locating in Little Rock, Arkansas.

*James Carter*

He began working for Coastal in August of 1974 as Vice–President, stockholder, and manager.

As this was a bench trial, the Court allowed Mr. Carter to testify to receiving a telephone call, shortly after he moved to the Coast, from a man who identified himself as a representative of Gulf. The man, whose name the witness could not recall and with whom Carter did not even meet, is alleged to have visited Coastal on that occasion to check the premises and Coastal's

stock. Carter said that he gave the man permission to inspect because he thought that Coastal was insured by Gulf.

Carter did not know for sure that in 1974 Coastal was billed by Mississippi Rubber for insurance and he had no personal knowledge that, from 1971 to 1975, Gulf issued a policy to Mississippi Rubber or Coastal.

Were these facts offered in an ordinary civil action where the burden of proof is by the preponderance of the evidence, the plaintiff would have a difficult task; however, considering that in the case at bar the burden is that of clear and convincing evidence, the fabric of the plaintiff's case borders on diaphanous.

Aside from Mr. Hartung's interpretation of notes made by a Mutual employee nearly two decades prior which make no specific reference to Coastal nor to Coastal's location, there is offered no scrap of tangible evidence connecting Coastal to Mississippi Rubber through Gulf's policies.

Coastal had a fire; Mississippi Rubber was burglarized; and all businesses involved, including Mutual, Gulf and Coastal, appear to have had retention policies in the nature of seven years after which the relevant records would have been destroyed. According to Mrs. Storment's testimony, even the bank or banks with whom Mississippi Rubber did business during the period in question reportedly destroyed their records.

Although standing on its own, Mr. Hartung's testimony, even as an independent agent, might tempt this Court to find for the plaintiff, there are other contrasting factors, to-wit:

1) Coastal did not exist prior to October of 1972 and yet, an alleged insurance savvy owner was willing to pay for coverage for a full year (September 1971 to September 1972) before its inception; and

2) Having allegedly secured coverage for Coastal and Mississippi Rubber at a cost of $833.00 per year for a three-year period, Mr. Hebert dropped this coverage and replaces it with arguably similar coverage at an initial cost of $1,823.00 per year.

Regrettably, neither Mr. Hartung nor Mr. Hebert are available to answer the many questions which might serve to unequivocally decide this question or merely to establish coverage by clear and convincing proof; however, in their absence and without more documentation establishing a stronger linkage between Mississippi Rubber's arguable SMP coverage by Gulf and Coastal as an alleged added insured, this Court cannot find such coverage existed.

With respect to the effect of Mr. Hartung's testimony, in essence that he assured Horace Hebert that Mutual was adding Coastal to the Mississippi Rubber policy, this Court does not find that such amounts to a binding act of an agent upon a disclosed principal.

Citing *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880 (Miss.1987), the defendant correctly states that an agent's authority may be classified as either real or apparent. Further, the Court is directed to *Cosmopolitan Ins. Co. v. Capitol Trailer & Body, Inc.*, 145 So.2d 450, 453 (Miss.1962), for the principle that the burden of proof to establish the existence, as well as the scope of the alleged agency relationship, is on the party asserting it.

Hartung, by testifying that before adding an additional insured to a policy he had to get approval from Gulf, clearly had no real authority to so bind Gulf. Any attempt to bind Gulf under these facts would necessarily involve a theory of apparent authority.

As set out in *Ford v. Lamar Life Ins. Co.*, supra, and cited by the defendant:

One seeking to recover based on the theory of apparent authority must show 1) acts or conduct on the part of the principal indicating the agent's authority, 2) reliance on those acts, and 3) a detrimental change in position. (citations omitted)

*Id.* 513 So.2d at 888.

As argued by Gulf, the only piece of evidence offered by Coastal which could be applied to the aforestated test is Hartung's testimony that he told Hebert eighteen or nineteen years prior to this time that coverage would be added. Nothing has been

offered which indicates that Coastal relied upon the alleged offer nor that Coastal changed its position, vis a vis coverage, in reliance thereon.

This Court declines to infer that Hartung, because of Mutual's lengthy and continuing successful business affiliation with Mississippi Rubber and Coastal, would purposefully misstate the facts. This Court does, however, find that the fact that Hartung through Mutual clearly represented several insurance companies and obtained policies for Coastal and Mississippi Rubber through carriers other than Gulf is evidence that Mutual and Hartung were, during the relevant period, acting as the agent of Hebert, Mississippi Rubber and of Coastal more than for Gulf.

IT IS THEREFORE this Court's holding that the plaintiff failed to prove the existence of Coastal as an additional insured under SMP policy or policies, if any, which Mississippi Rubber had in place during the period in question with Gulf.

Having found no policy or policies in existence, it is this Court's conclusion that the issues of terms and limits of said policies is moot.

SO ORDERED.