CAMDEN FIRE INSURANCE ASS'N. *v.* KOCH.

Feb. 23, 1953

No. 38687 21 Adv. S. 6 63 So. 2d 103

*Wallace & Greaves,* for appellants.

*Boyce Holleman,* for appellee.

McGEHEE, C. J.

The plaintiff Frank Koch sued on three separate fire insurance policies which had been filled out, signed and delivered by Jackson & Taylor, an insurance firm at Gulfport, Mississippi, in favor of Mrs. G. R. Bond and covering the same building, furniture and equipment that was later purchased by the plaintiff from Mrs. Bond and her husband G. R. Bond on May 15, 1950, the insurance policies having been issued on June 22, 1948, for a period of three years from date. The three policies were issued on the same day by the said insurance agency, one being on behalf of Camden Fire Insurance Association for $1,667.00, one being on behalf of the Travelers Fire Insurance Company for $1,667.00, and one being on behalf of the Phoenix Insurance Company for the sum of $1,666.00. The three suits were consolidated by agreement of the parties in the trial court and were tried as one case.

The three policies insured a cafe building and other improvements on a parcel of land about one mile north of Wiggins for the total sum of $4,000.00, and also insured the furniture, equipment, etc., located in the cafe building for the total sum of $1,000.00.

The property was acquired by G. R. Bond in October, 1936, but he conveyed the same to his wife on February 22, 1944. For many years they kept the buildings and the contents thereof insured through the said Jackson & Tay-

lor Insurance Agency. When the policies were issued on June 22, 1948, the title to the property was vested in Mrs. Bond and she was therefore named as the insured in the policies.

On February 2, 1949, there was annexed to, and made a part of each policy, a mortgage clause providing that "loss or damage if any under each policy shall be payable to (1) First Federal Savings & Loan Assn." in Hattiesburg, Miss., in accordance with, and conformably to, the provisions of Section 5695, Code of 1942.

Thereafter when the property was sold to the plaintiff Frank Koch on May 15, 1950, he assumed the indebtedness of nearly $2,000.00 which was owing by Mr. and Mrs. Bond to the said First Federal Savings & Loan Assn. The plaintiff did not then have the insurance policies assigned to him by the insured, but he testified that he did not arrange for insurance on the property "because I understood there was insurance on it," and that during the latter part of May, 1950, or the early part of June of that year, and prior to the total destruction of the building, furniture and equipment by fire, on July 10, 1950, he went to the office of Jackson & Taylor at Gulfport, Mississippi, and informed Mrs. Taylor that he had purchased the property and would like to have the insurance changed to him and that she said she would attend to it.

The plaintiff further testified that after about three weeks had passed, and he had not heard anything further as to what had been done about the insurance policies, he sent an employee, Dick Bullock, to make inquiry in regard thereto, and Bullock testified that he went to the office of the insurance agency, and asked to see Mrs. Taylor, learned that she was absent from the office at that particular time, and was told by the man in the office that the "papers had been sent off," and he testified that "I told Mr. Koch." The witness testified that he thought that the man he talked to was Mr. Jackson, and that this

conversation occurred about the middle or the latter part of June 1950.

The plaintiff testified that thereafter, and before the fire occurred, he had another employee to inquire at the insurance office about the matter, and that it was reported to him that they were trying to get in touch with Mr. or Mrs. Bond; that the plaintiff had ample time to have obtained other insurance and would have done so except for his reliance upon the assurances given him by Mrs. Taylor on his first visit to her office that the policies would be changed to conform to the changed ownership of the property, although it appears that they were then in the possession of the First Federal Savings & Loan Assn. at Hattiesburg, as mortgagee.

Mrs. Taylor testified at the trial that she did not know of the change of ownership prior to the fire, and that she had not had any conversation with the plaintiff or either of his said employees in regard to the insurance, and had never seen the plaintiff prior to the trial.

Thus it will be seen that an issue of fact on conflicting testimony was presented to the jury on the question of estoppel.

The plaintiff concedes that the insurance policies do not operate in rem so that the title to the same would pass by a conveyance of the property. Hence it is unnecessary that we review the authorities cited by the defendant on that issue. The plaintiff relies solely upon the fact that he as purchaser of the property had failed to take out fire insurance on the same because he understood that there was already insurance on it, and relied upon the assurances of the general agent of the companies that the policies would be changed to him and that he would be protected. Except for Section 5706, Code 1942, and the decisions of this Court construing the same, together with the alleged conversation with the local agent, and the holding that such an agent may waive written provisions of a policy and thereby bind the in-

surer, there would be no question but what the defendants in these cases would have been entitled to a directed verdict in their favor under the authorities cited in their briefs, since there was no assignment of the policies to the plaintiff by either Mr. or Mrs. Bond until after the fire, no written consent of the insurer to such an assignment, and no request by either of the Bonds that the policies be transferred to the purchaser of the property. Nor did Mrs. Bond as the insured named in the policies have an insurable interest in the property at the time of the loss. The question is whether or not the plaintiff on the ground of an estoppel became the insured in lieu of Mrs. Bond by reason of the alleged understanding had between the plaintiff and the general agent prior to the loss.

The unearned portion of the premium on each of the policies, amounting to approximately $74.00 in each instance, was tendered by the defendants and paid into the registry of the court, but there had been no offer to return the unearned portion of the premiums to either the insured or to the plaintiff prior to the filing of the suits.

■■ The premiums on each of the policies had been paid in full by the insurance firm of Jackson & Taylor to the respective insurers. The agency had collected the entire amount of the premiums from Mr. Bond when the policies were issued, less $150.00 for which he executed a contractual obligation to the Hancock County Bank at Gulfport, pursuant to which he was to pay the bank $157.50 as principal and interest. This obligation of Bond to the bank was endorsed by Jackson & Taylor, and it appears that they then received the money obtained by Bond from the bank to reimburse themselves to that extent for the portion of the premiums paid to the insurers, and not otherwise paid by the insured, all prior to the destruction of the property by fire; that in August, 1950, after the fire the plaintiff supplied Mr. Bond with the necessary funds with which to discharge

the obligation at the bank; that Mr. Bond then went to the office of the insurance agency at a time when the bank was closed, and left with the agency the sum of $100.00 in cash and his check for $57.50 on a bank in California where he was then living; and the said insurance agency thereafter and without delay turned the money and check over to the bank in settlement of Mr. Bond's promissory obligation.

It is contended by the plaintiff that this constituted an acceptance of a part of the premiums on the policies after the loss occurred and that therefore such acceptance bound the insurers under the policies. We do not so construe the transaction. We think that what occurred on the occasion last above mentioned merely amounted to the payment by Mr. Bond of his own obligation at the bank, since the insurance companies had prior to the loss received their portion of the premiums in full, and the insurance agency had been fully reimbursed out of the proceeds of the loan at the bank at the time Mr. Bond obtained the loan.

The circumstances related in the two preceding paragraphs, together with the fact that the insured made no demand of the insurance companies for a return of the unearned portion of the premiums merely indicate that the plaintiff was to have the benefit of the insurance during the remainder of the term thereof, so far as the insured was concerned.

In other words, we think that the plaintiff must recover, if at all, upon the basis of the conversations which he claims were had with the general agent prior to the loss, as working an estoppel against the defendants to deny that the purchaser of the property was protected at the time of the loss.

In the case of Stokes v. American Central Ins. Co., 211 Miss. 584, 52 So. 2d 358, the fire insurance policy there involved contained a provision reading, "Assignment of this policy shall not be valid except with the written consent of this company." This same provision

is contained in the policy involved in the instant case. But in the Stokes case, supra, the general agent in this state of the nonresident insurance company endorsed on the policy the words "This policy is hereby assigned to Mrs. Doxie Stokes," and the endorsement was not signed by the company. In the instant case Mrs. Taylor did not write such an endorsement on the policies in question, as was done by the agent in the Stokes case.

 The provision in the policy to the effect that the "Assignment of this policy shall not be valid except with the written consent of this company" was for the benefit of the insurer, and it had the authority to waive such a provision. However, the point decided in the Stokes case was that the act of the agent in endorsing on the policy the words, "This policy is hereby assigned to Mrs. Doxie Stokes," was the act of the company itself. We think that it is likewise true in the instant case that the alleged assurances given by Mrs. Taylor to the purchaser of the Bond property that the policies would be changed to conform to the change in ownership, and which fact was resolved by the jury in favor of the plaintiff, was the act of the insurers and had the effect by estoppel of waiving the provision that the assignment would not be valid except with the written consent of the companies, if the plaintiff relied upon such assurances.

In the case of Liverpool & London & Globe Ins. Co. v. Delaney, 190 Miss. 404, 200 So. 440, decided by this Court in banc, the policy contained a provision which read: "This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; . . .," and the Court said: "The policy was issued by R. P. Stewart, a local agent of the appellant, to whom it supplied blank policies to be filled up, countersigned and issued by him, without referring applications therefor to the appellant. This policy was issued

on a verbal application therefor by L. W. Delaney, the appellee's husband, who testified that he told Stewart of an insurance policy then covering the house to be insured, and answered such questions as Stewart propounded to him. Stewart also testified and admitted the verbal application for the policy but said that he did not remember that Delaney told him of the policy then on the house, and would say that he did not so tell him,'' and gave his reasons for his conviction in that behalf.

In the case of Lititz Mutual Insurance Co. v. Miller, et al., 210 Miss. 548, 50 So. 2d 221, in regard to an unconditional ownership clause in the policy that where an insurance agent accepted application for a fire insurance policy, knowing that the property was mortgaged, the existence of the mortgage does not invalidate the policy under the unconditional ownership clause.

Section 5706, Code of 1942, provides, among other things, that ''Every person who . . . shall examine or inspect any risk, or receive, collect or transmit any premiums of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company . . . shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; . . .'' In other words, the agent who has authority to fill out, sign and deliver an insurance policy in this state, and especially for a foreign insurance company with whom the applicant for insurance has no dealings other than through such agent, has all the powers of a general agent of the company when issuing such policy and may waive any of their provisions.

It is contended, however, that this authority is applicable only to the acts of such an agent before and up to and including consummation of the insurance, and the acts of such an agent in the examination and adjustment

of losses; that the statute in question would not be applicable in the instant case for the reason that the insurance contracts in question were consummated prior to the purchase of the property by the plaintiff. Although this rule may be applicable as between the insurer and the insured as to consummated contracts, ██ the fact remains that so far as the plaintiff here is concerned, he is in the status of an original applicant for insurance who is told that the insurance applied for would be issued and that he would be protected from loss by fire from and after the agreement of the agent to issue the policy applied for. The plaintiff, according to his testimony, made application to the agent for the existing policies to be changed so as to conform to the change in ownership, and he further testified that he was assured by the agent that this would be done and that he would be protected; that he had informed the agent of the change in ownership, and that relying upon the consent of the agent to such change, he failed to take out other insurance for his protection, although he would have had ample time to do so before the fire. If the plaintiff's version of what occurred is true, the agent's waiver of the provision in the policy which declared that it could be assigned only with the written consent of the insurer was as effectual as if the company itself had agreed to waive such provision.

Assuming that the conversations contended for by the plaintiff were had with the agent, as found by the jury, the record fails to disclose that the agent either informed the plaintiff that it would be necessary to obtain the written consent of the insurer for the assignment to be made, or that the plaintiff should obtain the consent of the insured for this to be done. The insurance policies were then in the possession of the First Federal Savings & Loan Association at Hattiesburg, and it does not appear that the plaintiff was familiar with the provisions contained in them, but according to his testimony, he

went away in reliance upon the assurances that he would be protected against loss.

■■■ Moreover, the knowledge furnished to the agent as to the change of ownership in the property became the knowledge of the insurers, and they knew that Mrs. Bond, the insured, was not requesting the return of the unearned portion of the premiums paid and they did not offer to return the same until after the suits were filed. This fact was for the consideration of the jury, along with the testimony of the plaintiff and his witnesses as to whether or not the agent understood that the plaintiff was to have the benefit of the unexpired term of the insurance and that he was to be protected thereafter under the policies.

Since we are holding that the right of the plaintiff is governed entirely by whether or not the defendants are estopped to deny liability, we deem it unnecessary to discuss the numerous authorities cited in the brief on behalf of the insurance companies, and especially in view of the statute and the cases hereinbefore cited; and because of the principle announced in the case of Hartford Fire Ins. Co. v. J. R. Buckwalter Lumber Co., 116 Miss. 822, 77 So. 798; 29 Am. Jur., Sec. 135, p. 151; Saint Paul Fire & Marine Ins. Co. v. Loving, 163 Miss. 114, 140 So. 727; Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 122 So. 551; Sutherland v. Federal Ins. Co., 97 Miss. 345, 52 So. 689; and Franklin Ins. Co. v. Franks, 145 Miss. 494, 111 So. 135.

While we think that one of the instructions given the plaintiff was incorrect, we do not think that the granting of the same would constitute reversible error; that it did not amount to a peremptory instruction when considered with the other instruction assigned as error.

It follows that the judgments rendered by the trial court against the defendant in each of the three consolidated cases for the difference between the amount

paid by them to the mortgagee and the amount of the insurance provided for in each policy must be affirmed. Affirmed.

*Lee, Kyle, Arrington* and *Ethridge, JJ.,* concur.