# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-CA-00604-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*NATIONAL BANK OF COMMERCE AS TRUSTEE OF
THE ESTATE OF J. BAYARD SNOWDEN,
DECEASED, AND ROBERT GALLOWAY SNOWDEN;
MAY SNOWDEN TODD; JOHN BAYARD SNOWDEN;
FLORENCE S. REYNOLDS; THOMAS HARDY
TODD, III; BAYARD SNOWDEN TODD; ROBERT
CARROLL TODD AND ROBERTA T. ANDERSON AS
BENEFICIARIES OF THE TRUST*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/94 |
| TRIAL JUDGE: | HON. MILLS E. BARBEE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | MICHAEL T. LEWIS |
| | PAULINE S. LEWIS |
| ATTORNEY FOR APPELLEES: | TAYLOR BUNTIN |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 8/14/97 |
| MOTION FOR REHEARING FILED: | 9/11/97 |
| MANDATE ISSUED: | 2/23/98 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

¶1. This case arises out of the Desoto County Special Court of Eminent Domain. The appellant, the Mississippi Transportation Commission ("the Commission"), filed its original petition of condemnation on August 27, 1993. The petition requested acquisition of land on Goodman Road in Desoto County. The purpose of the acquisition was to expand Goodman Road from a two-lane blacktop into five lanes to accommodate the projected growth of Desoto County. The total acquisition consisted of 8.65 acres along the northern boundary of the property, which in whole consists of 733-742 acres. The land in question is held in trust by National Bank of Commerce, as trustee for the Snowden estate. The Commission filed a Statement of Values claiming damage to the

landowners in the amount of $62, 720. The landowners filed their Statement of Values claiming damages of $623,777. The jury rendered a verdict in favor of the landowners in the amount of $192, 000, upon which judgment was entered. The Commission appealed assigning the following as error:

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE LANDOWNER'S EXPERT, ALLEN, TO STATE HIS OPINION OF THE VALUE OF THE CONDEMNED PROPERTY AS IF REZONING WAS AN ACCOMPLISHED FACT, IN VIOLATION OF THE HOLDING IN *MISSISSIPPI STATE HIGHWAY COMMISSION V. WAGLEY,* 231 SO. 2D 507 (MISS. 1970).**

**II. WHETHER THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION P-7, WHICH WOULD HAVE INSTRUCTED THE JURY THAT IT SHOULD NOT VALUE THE PROPERTY AS IF REZONING WAS AN ACCOMPLISHED FACT PURSUANT TO *WAGLEY, SUPRA.***

**III. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION D-10, WHICH INCORRECTLY STATED THE *WAGLEY* RULE.**

**IV. WHETHER THE TRIAL COURT ERRED IN REFUSING JURY INSTRUCTION P-8, WHICH WOULD HAVE INSTRUCTED THE JURY TO DISREGARD APPRAISER ALLEN'S TESTIMONY.**

## STATEMENT OF FACTS

¶2. The subject property is owned by the beneficiaries of the testamentary trust of J. Bayard Snowden, who is deceased. The trust is administered by National Bank of Commerce. Prior to the taking, the property consisted of approximately 733-742 acres, and was primarily zoned Agricultural-Residential (AR) which allows low-density residential use. All of the commercially-zoned area was located in the northern portion of the property adjacent to Goodman Road. The property condemned by the Commission consisted of between 8.65 and 8.89 acres, of which 5.18 acres were zoned AR and approximately 3.70 acres were zoned commercial.

¶3. In the course of discovery for this trial, the Commission propounded an interrogatory to elicit from the landowners the testimony of their expert appraiser, Allen. The Commission moved in limine, at trial, to exclude Allen's testimony based on his answers to the interrogatory. The Commission argued that Allen's testimony should be excluded because he had valued the property as if rezoning had already occurred, in violation of this Court's holding in *Mississippi State Highway Comm'n v. Wagley,* 231 So. 2d 507 (Miss. 1970). The trial court overruled the motion in limine. The Commission maintained and preserved a continuing objection to Allen's testimony, which was overruled by the trial court. Allen's testimony is the primary source of contention on appeal. The Commission argues that the testimony should have been excluded, and that its admittance by the trial court was reversible error.

¶4. The court, at trial, also refused jury instruction P-7, submitted by the Commission, and admitted jury instruction D-10, submitted by the landowners. The Commission argues that D-10 incorrectly stated the rule set out in *Wagley*, and that P-7 correctly stated it.

## ISSUE I AND ISSUE IV

¶5. Issue I and Issue IV are discussed in conjunction with one another, as they both pertain to the testimony of Allen, the landowners' expert appraiser.

¶6. The admission of expert testimony is committed to the sound discretion of the trial judge. *Mississippi State Highway Comm'n v. Terry,* 288 So. 2d 465, 466 (Miss. 1974). However, "[w] here the court has exercised its discretionary authority against a substantial misperception of the correct legal standards, our customary deference to the trial court is pretermitted, *Burkett v. Burkett,* 537 So. 2d 443, 446 ( Miss. 1989); *Gibson v. Manuel,* 534 So. 2d 199, 204 (Miss. 1988), for the error has become one of law." *Boggs v. Eaton,* 379 So. 2d 520, 522 (Miss. 1980); *S & A Realty Co. v. Hilburn,* 249 So. 2d 379, 382 (Miss. 1971).

¶7. The Commission bases its argument on the *Wagley* case and contends that the trial judge improperly applied the rule set out in that case. In that case, Cynthia Wagley was the owner of a tract of land in the City of Jackson located east of Terry Road. Wagley owned frontage of 125.6 feet on Terry Road. The property was unimproved and was zoned residential as of the date of condemnation. At trial, the Commission's appraiser valued the property as residential and did not consider that its highest and best use was commercial. The Commission's appraiser explained that the property was zoned residential and only four years before, the City Commission had denied an application by Wagley to rezone the property. Therefore, in his opinion, a zoning change could not be expected in the near future.

¶8. Wagley's two appraisers both testified that, although the property was zoned residential, its highest and best use was commercial. The jury rendered a verdict in the amount of $25,000 for the taking of 1.3 acres and the Commission appealed. In reversing and remanding for a new trial, this Court said:

> Where . . . there is the possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative. An important caveat to remember in applying the rule is that the property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning.

*Mississippi State Highway Comm'n v. Wagley,* 231 So. 2d 507, 509 (Miss. 1970).

¶9. The Court found in *Wagley* that the appraiser for the Commission had valued the property based on its being zoned residential, and had given no consideration to the fact that the highest and best use may have been commercial. On the other hand, the Court found that the landowner's appraisers had valued the property as if it had already been rezoned commercial. The Court reversed and remanded for a new trial on the issue of damages. *Id.* at 509-510.

¶10. The Commission asserts that the expert testimony of Allen concerning the highest and best use of the property should have been excluded because there was no reasonable probability of a zoning

change, and Allen valued the property as if it had already been rezoned.

¶11. At the trial *sub judice*, there was much testimony concerning a comprehensive plan to control planning and land use throughout Desoto County and the City of Southaven that was in the process of being adopted. The Goodman Road/Getwell Road area, including the subject property, received detailed treatment as an "intensive planning area" under the plan. The recommended land use for the subject property included commercial use of the northern portion and medium-density residential use of part of the central portion. The plan known as "Desoto 2010" was adopted in February 1995 prior to trial. However, "Desoto 2010" did not change the existing zoning. What it did do was set up a process by which a landowner would have to submit a preliminary site plan, and next an application for approval. Finally, a public hearing would have to be held.

¶12. The Commission argues that Allen, in determining that the northern 115 acres of the 733-acre block had a highest and best use of commercial, valued the property as if it were already zoned in that way. This, they argue, violates **Wagley**. The property was zoned AR on the date of the taking.

¶13. The Commission further argues that Allen's testimony failed to establish that there was a reasonable probability that the property would be rezoned within the reasonably foreseeable future for a reasonably foreseeable use. At trial, Allen determined, in part based on the Desoto 2010 plan, that there existed a reasonable probability that the existing zoning could be modified from AR to a mixture of multi-family residential, office and commercial. However, the Commission argues that the Desoto 2010 plan did not change the existing use and none of the requirements for rezoning under Desoto 2010 had been met. Further, it argues that the landowners' only plan for the property was consistent with residential zoning, and inconsistent with a rezoning. They base this argument on the fact that in the 1970's Snowden had had a study done concerning turning the property into a subdivision or a golf course. Snowden testified at trial that the growth in the area made his plan more feasible. The Commission argues this development would not change the zoning. It would remain exactly as it was the day of trial, i.e., residential except for the commercial corners.

¶14. Allen admitted at trial that none of the requirements had been met by the landowners which would be necessary to have zoning changed under Desoto 2010. He also testified that the concept of "highest and best use" requires, as one of its elements, that the use be "legally permissible." He further testified that it would not be "legally permissible" to put a commercial establishment on the AR zone unless the zoning was changed by completing the process set out in Desoto 2010. The Commission argues that these facts establish that, as of the applicable date, there was no probability of a zoning change. Therefore, the Commission contends that the trial judge erred in allowing Allen to state his opinion in violation of the rule in **Wagley.**

*¶15.* The landowners argue that the overwhelming proof at trial showed that there was a reasonable probability that the existing zoning could be modified, that the property would be used within a reasonable time for the use to which it is adapted, and that Allen did consider the existing zoning, along with reasonably probable modifications, in reaching his opinion. In his testimony, Allen discussed his analysis and how he had arrived at his opinion. He did consider the existing zoning, and testified that he had conversations with the Planning Director of Desoto 2010. He testified that in discussions with the director, he learned that plans presented that were compatible with Desoto 2010 would "probably be considered favorably by the planning department." He also testified that he

applied the four basic precepts of "highest and best use" which are: physical possibility, legal permissibility, economic feasibility, and maximum productivity. Allen also physically inspected the property and made comparisons with other properties. In Allen's opinion, the highest and best use of the property was a mixture of residential, commercial and office.

¶16. This Court finds that Allen did value the property as if had already been rezoned. The question then becomes: Was there a possibility or probability that the zoning restriction would be changed in the near future or was that change remote and speculative? We conclude that a change in zoning was speculative. As such, the trial judge erred in allowing Allen to state his opinion of the value of the condemned property as if rezoning was an accomplished fact. This error requires that this case be reversed and remanded for a new trial on the issue of damages.

¶17. Compounding that error was the trial court's refusal of jury instruction P-8, which would have instructed the jury to disregard Allen's testimony.

## ISSUE II AND ISSUE III

¶18. These assignments of error, raised by the Commission, pertain to jury instructions. The Commission argues that P-7, offered by the Commission and refused by the trial court, should have been given because it correctly stated the *Wagley* rule. The Commission also argues that D-10, offered by the landowners and given, should have been refused because it incorrectly stated the rule. The two instructions read as follows:

### P-7.

The court instructs you that in determining compensation, you should consider the zoning of the subject property as it affects its highest and best use. In making this determination, you must decide whether there is a reasonable probability of rezoning the property in the near future. There must be some probability that the land will be used within a reasonable time for the particular rezoned use. Even if you determine that there is a reasonable probability that the property would be rezoned commercial in the near future, you may not value the property or assess just compensation as if the zoning had already been accomplished. Change in the zoning regulation must not be remote or speculative.

### D-10.

In determining the highest and best use of the property you should not consider mere speculative uses to which the property can be put. However, you may consider not only the present use of the land, but any use to which it may be reasonably adapted within a reasonable time. In so doing, you may consider the existing zoning, and any reasonably probable modifications of the existing zoning.

¶19. The Commission argues that P-7 was a complete statement of the rule set out in *Wagley,* and should have been granted. It also argues that D-10 was an incomplete statement of the law because it failed to instruct the jury that they should not consider the valuation of the property as if the rezoning was an accomplished fact.

¶20. The landowners argue P-7 was an incomplete statement of the law because it failed to

specifically tell the jury that in fixing its award, it could consider a use which is consistent with a reasonable probability of rezoning.

¶21. The trial judge has considerable discretion in instructing the jury, and this Court reviews those instructions as a whole. *Splain v. Hinds,* 609 So. 2d 1234, 1239 (Miss. 1992). After careful review of all of the instructions given to the jury in this case, we find that the jurors were at no time instructed that they were not to value the property as if it had already been rezoned. The Commission argues, and this Court agrees, that this a key concept laid out in *Wagley* and the jury should have been instructed on it. Therefore, since D-10 does not instruct on this, P-7 should have been given along with D-10. Neither is a perfect instruction, but given together, they would have adequately instructed the jury by fully stating the rule in *Wagley*. The trial judge erred in refusing jury instruction P-7. He did not err in granting jury instruction D-10.

## CONCLUSION

¶22. The trial court erred in allowing the landowners' expert to state his opinion as to the value of the condemned property as if rezoning had already occurred. The Court further erred in denying jury instructions P-7 and P-8. These errors are cause for reversal. This case is remanded for a new trial on the issue of damages.

**¶23. REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**SULLIVAN, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND McRAE, J. PRATHER, P.J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING:**

¶24. In my view, the question of whether there was a reasonable probability of rezoning was properly submitted to the jury in this case but the failure to grant P-7 left the jury improperly instructed. While there is scant evidence from the closing arguments that the jury was in anyway misled as to its task, it cannot be said that the failure to give the instruction P-7 in combination with D-10 had no effect.

¶25. I do not agree with the conclusion that there was no reasonable probability that the property in question would be zoned commercial and that any testimony concerning commercial usage was erroneously admitted. In my view, the land use plan for the county is sufficient to allow the jury to assess the probability for commercial use of the property. The property owner's appraiser testified clearly that he considered present zoning as well as the reasonable probability of rezoning in arriving at his conclusions as to value. In my view, that is all that *Mississippi State Highway Comm'n v. Wagley,* 231 So. 2d 507 (Miss. 1970), requires.

¶26. I do not agree that some prospect of immediate rezoning is necessary. What a landowner loses is

property value. Property values are based in part upon potential uses. A property with commercial potential and a reasonable probability of the removal of a legal impediment to realizing that potential, such as zoning, has a greater value than property with only agricultural or residential potential. A jury should be allowed to consider that potential. It is not so allowed where the court precludes testimony concerning commercial valuation.

**LEE, C.J., AND McRAE, J., JOIN THIS OPINION.**