## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CA-01439-SCT

*STEVEN BRUCE BOOKER, ON BEHALF OF CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, SIGNATORY TO CERTIFICATE NO. HR-400213-S*

*v.*

*HOLMES PETTEY AND HOLMES PETTEY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/1998 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH C. GIBBS |
| ATTORNEYS FOR APPELLEES: | RICHARD B. LEWIS |
| | RALPH EDWIN CHAPMAN |
| | DANA J. SWAN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 8/24/2000 |
| MOTION FOR REHEARING FILED: | 9/21/2000; denied 11/9/2000 |
| MANDATE ISSUED: | 11/16/2000 |

### BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.

### BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. Here we treat the cancellation of an insurance policy. If the insured is deemed to have canceled it, there is no coverage for the loss claimed by the injured party. If the insurer canceled, there is coverage. That determination turns on whether the procuring agent was in fact or law acting on behalf of the insurer when the policy was canceled. We conclude that the jury determination of this issue in favor of the insured is flawed because of a faulty instruction. Accordingly, we reverse and remand for a new trial.

### I.

¶2. The complaint in this case was initially filed on February 3, 1986, in the Circuit Court of Coahoma County, Mississippi, by Holmes Pettey and Holmes Pettey, Inc. ("Pettey") against H.J. Riverside, Inc., Bolivar Delinting Company a subsidiary of H.J. Riverside, and Planters Gin Co., Inc. of Indianola.

¶3. During the farming season of 1985, Pettey purchased cotton seed from H.J. Riverside, Inc., with the representation that the seeds would germinate at eighty-six per cent (86%). The seeds failed to germinate, and Pettey suffered damages to his crop yield for that year. H.J. Riverside, Inc., is a corporation whose principal stock holder and manager is Robert "Bob" Jones. Riverside had a policy of insurance, through

Lloyd's of London ("Lloyd's"), that provided for $100,000 coverage less a $5,000 deductible against the type of loss that Pettey suffered. Riverside's insurance was placed with Lloyd's through the Bobo Insurance Agency, a local insurance agent in Clarksdale, Mississippi, owned by Bob Bobo, Jr. The Bobo Insurance Agency secured the policy with Lloyd's through Lloyd's United States agent, Illinois R. B. Jones, Inc. The claims made policy was in force from March 15, 1985 until March 15, 1986.

¶4. H.J. Riverside ceased operations in December of 1985 because of financial difficulties. On December 20, 1985, representatives of Bobo Insurance Agency and Bob Jones met at Riverside's place of business and canceled all of his insurance policies. One of the policies canceled was the policy that is subject of this appeal. Although the policy was canceled on December 20, 1985, the policy provided that the coverage period would extend for one year if the insurer caused the cancellation.

¶5. Pettey sued Riverside on February 3, 1986, for the negligent manufacture, sale, and delivery of the cotton seed. The Bobo Insurance Agency notified Lloyd's agent by letter of the suit on or about February 24, 1986.

¶6. Neither H.J. Riverside nor Bolivar Delinting made an appearance in this case. A default was taken against H.J. Riverside Inc. only on May 21, 1986. On or about July 15, 1986, H.J. Riverside, Inc. filed for bankruptcy and Pettey moved the bankruptcy court to lift the stay to proceed against Riverside's insurer, Lloyd's. Thereafter, the bankruptcy court lifted the automatic stay against H.J. Riverside permitting Pettey to proceed with the suit.

¶7. On or about March 14, 1988, the circuit court entered a default judgment against H. J. Riverside, Inc. in the amount of $264,375. Thereafter, the Plaintiffs issued a writ of garnishment against Underwriters at Lloyd's of London on the Certificate of Insurance that had been previously issued to H.J. Riverside and was canceled effective December 20, 1985.

¶8. This case proceeded as a garnishment action against Lloyd's. Initially this case was heard on cross motions for summary judgment. The trial court granted the plaintiffs' motion for summary judgment and denied Lloyd's motion for summary judgment. An appeal was taken to this Court, which reversed and remanded the case on October 17, 1996. *Booker v. Pettey*, No. 92-CA-1273-SCT (Miss. Oct. 17, 1996)(Not Published).[(1)]

¶9. The case then proceeded to a jury trial resulting in a verdict in favor of the plaintiffs against Lloyd's in the amount of $95,000, the limit of the available insurance coverage, plus interest from and after March 14, 1988. Judgment was entered accordingly.

¶10. A motion for new trial or judgment notwithstanding the verdict was filed by the Underwriters, garnishee, which was denied by order of the circuit court dated August 18, 1998. This case is now appealed to this Court.

## II.

¶11. In considering whether the trial court erred in denying judgment notwithstanding the verdict this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. *Sentinel Indus. Contracting Corp. v. Kimmins Indust. Ser. Corp.*,743 So.2d 954, 960 (Miss. 1999). "If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary

verdict, we are required to reverse and render." *Id*. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions this Court will affirm. *Id*.

¶12. On remand the jury was to decide whether there was a valid cancellation of the certificate of insurance. Also, this Court determined that there was enough evidence for a jury to decide whether Lloyd's received timely notice of the claim, which is a prerequisite to coverage. *Booker v. Pettey*, Slip op. at 11.

**a.**

¶13. Lloyd's argues that a condition precedent to its liability under the claims made policy was that Riverside must have notified Lloyd', during the period that the policy was in effect, that a claim was being made. Lloyd' argues that since no claim was ever made under the policy, it never became indebted to Riverside. Thus, it owed no debt to Riverside which could become the object of an effective garnishment action by Pettey.

¶14. A Seedsmen's Errors and Omissions Certificate provided by Lloyd's is a claims made policy or as denoted in the policy itself a "claims made certificate." Lloyd's notes that the policy provides under its covering provision as follows:

> NOW, THEREFORE, this insurance, subject to the terms, exclusions and conditions hereof, will pay on behalf of the Assured all sums which the Assured shall become legally obligated to pay arising out of any claim or claims made against the Assured during the period stated in the said schedule;...

> PROVIDED ALWAYS THAT the Underwriters shall not be liable for any sum arising out of any claim unless the amount thereof exceeds the amount stated in the said Schedule as the deductible, which amount shall be deducted from such sum arising out of each claim and borne by the Assured at their own risk and the Underwriters shall only be liable for loss in excess of such stated amount...

Booker noted that the deductible, as provided on the renewal certificate HR-400213-S, is $5,000.

¶15. Paragraph 3(A) of the insurance policy provides as follows:

> It is a condition precedent of this insurance as to any obligation of the Insurer as respects each claim that the Assured shall give to the Underwriters through their representative, Messrs. Lord, Bissell & Brook 115 South La Salle Street , Chicago, Illinois 60603, immediate notice in writing of that claim made against it which is covered by this insurance and which exceeds or appears likely to exceed the amount of the deductible and shall give to the Underwriters such information with respect to such claim as the Underwriters may reasonably require.

(emphasis added). Lloyd's argues that a claim was never made in accordance with the terms of Paragraph 3(A). Lloyd's notes that Bob Jones, President of Riverside at all relevant times, states that he never gave notice to Lord, Bissell & Brook, or requested that notice be given to them of the pendency of any possible claim by the plaintiff. Bob Bobo testified his first knowledge of a probable claim was upon receipt of attorney Ralph E. Chapman's letter in February 1986.

¶16. Lloyd's notes that when the method for calculating the earned premium is the short rate it means that the Assured canceled the policy. Here, the short rate was used so Lloyd's asserts that Pettey must have

canceled the policy, not the insurer.

¶17. In December of 1985 when Riverside ceased doing business, Bob Jones met with representatives of the Bobo Insurance Agency, which aided him in obtaining coverage with Lloyd's. It is not clear who called the meeting but Jones acknowledged at trial that he requested cancellation of the Seedsmen's Errors and Omissions Certificate HR-400213-S. The claims made policy states that if the policy is canceled by the assured then it is canceled without any further coverage or what is commonly referred to as "tail coverage." Lloyd's states that the cancellation is complete, final and immediate. It notes that Riverside received a check through the Bobo Insurance Agency for the return of the premium signifying the termination of the coverage and based upon short rate cancellation in response to the Assured's request for cancellation. Lloyd's argues that this endorsement, effective December 20, 1985, and return of the premium on short rate basis plus negotiation of the check for the return premium manifested the intent of the assured and agreement of the underwriters to cancel the coverage immediately without any further obligations.

¶18. Bobo stated that he had no authority, as agent, to effect the cancellation of the certificate and that it was surrendered to him by Bob Jones. Bob Bobo sent it to Illinois R. B. Jones, the broker, with the request from the insured that the policy be canceled.

¶19. Linda Deiss, an insurance underwriter for Lloyd's, testified that the certificate of insurance could be canceled only by one of two people in her office or by the insured. Deiss issued the endorsement effecting the cancellation on December 20, 1985.

¶20. In the first appearance of this case here, this Court held that there was a factual dispute as to the material issue of whether Riverside canceled the policy. *Booker v. Pettey*, Slip op. at 8. We stated that "[a]lthough the facts appear to substantially support a finding that Riverside canceled the policy, there is a question on the material issue of fact which requires disposition by a jury." *Id*. The facts which dictated this conclusion remained essentially unchanged. There was uncertainty as to who called the meeting to discuss cancellation and who first suggested cancellation. Bobo wrote a letter which was ambiguous as to the genesis of the cancellation. Bobo was an agent representing various insurance companies and placed the insurance on behalf of Lloyd's. Add to that because Riverside was in bankruptcy it did not as an entity and its owners did not have a significant financial incentive for cancellation.

¶21. This Court gives substantial deference to a jury's findings of fact and to the trial judge's determination that a jury issue was present and tendered. *City of Jackson v. Locklar*, 431 So.2d 475, 478-79 (Miss.1983). We see no reason to deviate from that posture in this case. The question whether Bobo was an agent for Lloyd's with respect to cancellation remains one for the jury. We conclude, however, as will be shown below, that the jury was improperly instructed on the question.

### III.

¶22. Lloyd's argues that the language of instruction P-7 tracks the statute, but the statute alone without further instruction and without interpretation, as indicated by the decisions rendered by this Court under § 83-17-1, was calculated to lead the jury astray. Lloyd's asserts further that the court erred in denying its agency instructions, including an instruction allowing the jury to conclude that Bobo was Riverside's agent. We agree.

¶23. The instruction given here is the exact same language found in the statute, Miss. Code Ann. § 83-17-1

(1999), as follows:

> Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract.

¶24. While the language of the statute seems all encompassing, our interpretations of it have narrowed its scope. In *Saucier*, a life insurance policy was delivered to the Appellant by the Agent for the company. *Saucier v. Life & Cas. Ins. Co.*, 189 Miss. 693, 198 So. 625 (1940). However, Appellant was unable to pay the first premium when the policy was delivered so the agent left the policy without collection of the premium and assured the appellant that the policy was in force. This Court affirmed the decision of the trial court denying the appellant's claim for benefits under the policy. The *Saucier* Court construed the statute as follows:

> The manifest purpose of § 5196 [now § 83-17-1, Miss. Code Ann. 1972], therefore, is to enable the state to effectually supervise insurance companies and their agents. This Court so held in *Cain v. State*, 103 Miss. 701, 60 So. 731, 732, the first case in which the statute was considered by this Court, wherein the Court said: "the statute ... was designed to protect citizens of the State, as well as insurance companies authorized to do business in the state .. the object of the statute was to keep wild-cat [insurance] companies or companies not complying with the law, from doing business in the state." To the same effect, see *Wilkerson v. Goza*, 165 Miss. 38, 145 So. 91.

189 Miss. at 701, 198 So. at 627-28. The Court continued:

> It [the statute] "undertakes" as said by the Supreme Court of United States in *Mutual Life Insurance Company v. Hilton-Green*, 241 U.S. 613, 36 S.Ct. 676, 680, 60 L. Ed. 1202, when construing a similar Florida statute, "to designate as agents certain persons who in fact act for an insurance company in some particular; but it does not fix the scope of their authority as between the company and third persons, and certainly does not raise special agents, with limited authority, into general ones, possessing unlimited power."

189 Miss. at 702, 198 So. at 628.

¶25. The Court concluded with the following:

> To raise an insurance company's special agent with limited powers into its general agent when acting for it in the particulars specified in the statute, with authority to then make material changes in a policy of insurance issued by the company, manifestly has no relation to the end or object for the

accomplishment of which this statute was enacted, or to any other imaginable legitimate legislative end.

189 Miss. at 705, 198 So. at 629.

¶26. We have consistently held that agents have limited authority. ***Old Colony Ins. Co. v. Fagan Chevrolet Co.***, 246 Miss. 725, 150 So.2d 172 (1963). There, this Court distinguished insurance companies' general agents that are specifically appointed and designated as general agents in the context of this State's law on agency as then § 5196 of the Code, now § 83-17-1. *Id*. at 178. The Court specifically held:

> [W]hen the statute aforesaid [§ 5196] is sought to establish the authority of somebody not so designated by the company, the same is applicable only to his acts before and up to and including the consummation of the insurance, and after that, what takes place in the examination and adjustment of the loss, and that as to all other matters and things the principles of the common law govern.

150 So.2d at 178.

¶27. Here, Bobo Insurance agency was an agent for the purposes of selling the insurance policy. This Court has yet to interpret § 83-17-1 to be all encompassing on the law of agency in this State. We are aware of the Fifth Circuit's treatment of this statute. ***Mississippi v. Richardson***, 817 F.2d 1203 (5th Cir. 1987) (Section 83-17-1 is written in the broadest terms; it creates agency relationships where they would not exist at common law). However, our precedents clearly state that special agents have no authority to extend the liability of the company in all situations. ***Old Colony Ins. Co.,*** 150 So.2d at 177 (1963) (citing ***St. Paul Mercury & Indem. Co. v. Ritchie***, 190 Miss. 8, 198 So. 741 (1940); ***American National Ins. Co. v. Walters***, 230 Miss. 616, 93 So.2d 616 (1957)).

¶28. Pettey argues that a subsequent decision rendered by this Court distinguished between an agent acting on behalf of a domestic insurer and an agent acting for a foreign insurer. ***Camden Fire Ins. Ass'n v. Koch***, 216 Miss. 576, 63 So.2d 103 (1953). *See also* ***Morris v. American Fidelity Fire Ins. Co.***, 253 Miss. 297, 173 So.2d 618 (1965). Pettey argues that both ***Morris*** and ***Koch*** stand for the proposition that a local agent who has the authority to fill out and deliver the insurance policy in the State of Mississippi for a foreign insurance company with whom the applicant for insurance has no dealings other than through the local agent, has all the powers of a general agent of that company and may waive any provision in the policy. ***Morris***, 173 So.2d at 623; ***Koch***, 63 So.2d at 107.

¶29. Pettey's reliance on ***Koch*** and ***Morris*** is misplaced. Neither ***Morris*** nor ***Koch*** involved a soliciting agent canceling an entire policy. In ***Koch***, which ***Morris*** cites for support, this Court held that an agent could waive a provision in the policy. ***Morris***, 173 So.2d at 623; ***Koch***, 63 So.2d at 107. However, we have not found any cases where this Court extended the holdings in these cases to include a soliciting agent's authority to cancel a policy. We find no reason to do so here.

¶30. We have admonished the trial courts on many occasions to avoid giving instructions which simply quote statutes or cases. ***Freeze v. Taylor***, 257 So.2d 509, 511 (Miss.1972)(We admonished attorneys against taking language from our opinions and creating jury instructions.); ***Gulf, M&N. R. Co. v. Weldy***, 193 Miss. 59, 8 So.2d 249, 251 (1942). *See also* ***Pritchard v. Liggett & Myers Tobacco Co.***, 350 F.2d 479, 487 (3d Cir.1965)("An academic recitation of the language of a statute without any direction as

to how it may be applied to the disputed facts before the jury is too general to furnish guidance to them.").

¶31. This is a perfect example of the ills of that practice. Granting P-7 was error which demands reversal of this judgment.

¶32. The trial court compounded the error in refusing defense instructions on the issue of agency, instructions D-3 and D-10. Instruction D-3 reads as follows:

> If you find by a preponderance of the evidence in this case that the Bobo Insurance Agency was an independent insurance agency which was representing the interest of H.J. Riverside, Inc., and acted as the agent of H.J. Riverside, Inc. in conducting the business of H.J. Riverside, Inc. and particularly with respect to requesting the cancellation of the certificate of insurance issued by Steven Bruce Booker on behalf of Certain Underwriters at Lloyds London, then you shall find that the request for cancellation of the certificate of insurance issued by Underwriters at Lloyds was cancelled [sic] based upon the request of the assured, H. S. Riverside, Inc., with the request for termination or cancellation being relayed by the Bob Bobo Insurance Agency as the agent of H. J. Riverside, Inc.. If you find, based upon a preponderance of the evidence in this case, that Bobo Insurance Agency was acting for and on behalf of H. J. Riverside, then you shall find for the Garnishee, Steven Bruce Booker on behalf of the Underwriters at Lloyds London.

Instruction D-10 states as follows:

> The party who asserts a particular fact has the burden of proving that fact. In this particular case the plaintiff, Holmes Pettey, is asserting that Bobo Insurance Agency was the agent of the Garnishee, Underwriters at Lloyd's. Therefore, Holmes Pettey has the burden of proving, by a preponderance of the evidence and based upon the facts in this case, that Bobo Insurance Agency was the agent for Lloyd's Underwriters. If the Plaintiff fails to carry that burden of proof and you find from a preponderance of the evidence in this case that the Plaintiff has not established through competent evidence that Bobo Insurance Agency was acting as an agent for Lloyd's then you must find that there was no agency relationship between the Bobo Insurance Agency and Underwriters's at Lloyd's London.

¶33. While D-10 is an instruction that states the burden of proof, which was given in both other court's instructions, D-3 accurately states the law with respect to agency in contradistinction to the erroneous quote from the statute in P-7. Here, Bobo Insurance Agency could have been acting as an agent for either Riverside or Lloyd's. *Mink v. Andrew Jackson Cas. Ins. Co.*, 537 So.2d 431, 434 (Miss. 1988). The burden of proving an agency relationship is upon the party asserting it. *Ciba-Geigy Corp. v. Murphree*, 653 So.2d 857, 872 (Miss. 1994); *Woods v. Nichols*, 416 So.2d 659, 664 (Miss. 1982); *Highlands Ins. Co. v. McLaughlin*, 387 So.2d 118 (Miss. 1980); *United States Fidelity & Guar. Co. v. Arrington*, 255 So.2d 652 (Miss. 1971). Under our agency law, a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority. *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1180 (Miss. 1990); *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987). "If an agent acted within his apparent authority, the issue of actual authority need not be reached." *Williams*, 566 So.2d at 1180. This case must be reversed because of these errors in the court's instructions.

**IV.**

¶34. Accordingly, the judgment of the Coahoma County Circuit Court is reversed, and this case is remanded to the circuit court for a new trial consistent with this opinion.

¶35. **REVERSED AND REMANDED**.

**PRATHER, C.J., PITTMAN, P.J., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶36. Sufficient notice was given in timely fashion by the Bobo Insurance Agency to Lloyd's of London ("Lloyd's") regarding the cancellation of Riverside's insurance policy. In addition, the Bobo Agency clearly had the capacity to cancel Riverside's policy on behalf of Lloyd's. The jury was properly instructed as to the law relevant to the case and returned a verdict against Lloyd's. This Court should not interfere with that decision. Accordingly, I dissent.

¶37. In its October 17, 1996, order, this Court remanded this case to the trial court with instructions that there were two issues of fact which were to be resolved by the jury. They were: (1) who canceled the policy, Riverside or Lloyd's and (2) if Lloyd's canceled the policy, was timely notice given by the Bobo Agency to Lloyd's. Both of those issues were properly submitted to the jury, and the jury, after deliberation, returned a verdict in favor of Pettey. Now, some fourteen years after this action was filed, this Court ignores the findings of the jury as to those very issues because it claims the jury was improperly instructed.

¶38. This case arises from a garnishment action filed by Holmes Pettey ("Pettey") against Steven Booker ("Booker") on behalf of certain underwriters at Lloyd's. Pettey, a farmer, lost most of his crop during the 1985 farming season due to defective seeds purchased from H.J. Riverside, Inc. ("Riverside"). Riverside was insured by Lloyd's through the Bobo Insurance Agency, a local insurance agency located in Clarksdale, Mississippi. During that same year, Riverside hit hard times financially and ceased operations. On December 20, 1985, representatives of the Bobo Insurance Agency and Bob Jones met at Riverside's place of business and canceled all of his insurance policies. The policy at issue in this case provided that coverage would extend for over one year if cancellation was caused by the insurer.

¶39. In February of 1986, Pettey calculated his losses and sued Riverside for the negligent manufacture, sale and delivery of cotton seed. The Bobo Insurance Agency notified Lloyd's agent by letter dated on February 24, 1986. Lloyd's chose not to defend Riverside, and in May of 1986, Pettey obtained a default judgment against Riverside for $264,375. In the meantime, Riverside filed for bankruptcy, and Pettey moved the bankruptcy court to lift the stay to proceed against Riverside's insurer, Lloyd's. Writs of garnishment were issued against Lloyd's.

¶40. On December 23, 1992, the trial court found that Lloyd's agent had canceled the policy and the one-year extension provided coverage for Pettey. Summary judgment was granted in favor of Pettey, and soon thereafter this Court reversed and remanded the case for a trial on the merits and with instructions for the jury to resolve two issues.

¶41. In its order, this Court instructed that the two factual issues to be determined by the jury were (1) who

canceled the policy, Riverside or Lloyd's, and (2) if Lloyd's canceled the policy, was timely notice given by the Bobo Insurance Agency to Lloyd's. After a full trial took place, the jury found that Lloyd's had in fact canceled the policy and Bobo did provide proper and timely notice. A verdict of $95,000 was returned in favor of Pettey.[2]

¶42. This Court has repeatedly held that a local agent who has the authority to fill out and deliver insurance policies in the State of Mississippi for a foreign insurance company with whom the applicant has had no dealings other than through the local agent, has all the powers of a general agent of that company. *Morris v. American Fidelity Fire Ins. Co.*, 253 Miss. 297, 173 So.2d 618 (1965). To find in favor of Pettey and hold that the insurance contract was in fact effectively canceled by Lloyd's would not alter our precedents, it merely clarifies them.

¶43. In this case there can be no dispute that Lloyd's is a foreign insurance company who sells no policies in this state except through its local agent, Bobo Insurance Agency. There can also be no dispute that Riverside dealt only with the Bobo Insurance Agency, filled out its application through the Bobo Insurance Agency, paid its premiums through the Bobo Insurance Agency and transacted all insurance business with that agency. As a result, the Bobo Insurance Agency was acting as the general agent of Lloyd's. Pursuant to Mississippi law, the acts of an insurance agent are binding on the insurer as long as the agent is acting within the scope of its authority.

¶44. This very court, in its order on October 17, 1996, held that "in this case, there is evidence that Bobo was an insurance agent for Lloyd's." In addition, the jury had possession of a letter written by Bob Bobo, Jr. to Clark King that stated, "[o]n December 20, **we canceled** all insurance that **we** had in effect for Riverside." *Booker v. Pettey*, No. 92-CA-0273-SCT, slip. op. at 7 (Miss. Oct. 17, 1996)(emphasis added).

¶45. The purpose of the Miss. Code Ann. § 83-17-1 (1999) definition of an insurance agent is to prevent results just as today's majority opinion promotes. An insurance agent is defined in order to keep insurance companies, like Lloyd's, from avoiding legal liability by operating through a third person for whom they later deny all responsibility. *Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342 (5th Cir. 1978).

¶46. In *American Cas. Co. v. Whitehead*, 206 So.2d 838 (Miss. 1968), the insurance company which issued a major medical policy to the plaintiff through one of its agents was bound by the acts of the agent even **after** the agency relationship between it and the local agency had been terminated. This Court relied on the fact that the plaintiff had never been informed by the insurer that the relationship had been dissolved. Similarly, in this case, Riverside was under the assumption that the insurance policy had been canceled and that coverage would extend for another year. Lloyd's failed to inform Riverside otherwise. Had Riverside been informed that Lloyd's preferred not to cancel the policy, then it would have surely continued paying premiums, continued being insured and collected on the claim, and in turn compensated Pettey. In contrast, if Riverside had been told that the policy was in fact going to be canceled and that coverage would not be extended for one year, it would have surely secured other insurance. In either circumstance, it was Lloyd's and its local agent's failure to inform Riverside that there was no coverage under the policy that led to Riverside's detrimental reliance and this lawsuit. Just as this Court did in *Whitehead*, it should recognize fault by the insurance company (Lloyd's) for the failure to notify and find for the insured (Pettey).

¶47. There is also no merit to Booker's argument and this Court's conclusion that the jury was improperly instructed. First of all, the majority holds that although the language of instruction P-7 tracks the statute, the

statute alone without further instruction and without interpretation, as indicated by the decisions rendered by this Court under § 83-17-1, could have lead the jury astray. Lloyd's argued that Plaintiff's instruction P-7 tells the jury only what the statute says without any interpretation and effectively commands the jury to find that the Bobo Agency was the agent of the Underwriters.

¶48. The trial court did not err in granting P-7 because it was a correct definition of what an agency is in accordance with Miss. Code Ann. § 83-17-1. The instruction given here is the exact same language found in the statute. The instruction given was as follows:

> Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract . . . .

¶49. This statute is this state's law on agency. *Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 766-67 (Miss. 1985). Although this instruction adequately reflects this state's statute on the law of agency for insurance companies, a simpler instruction may have been appropriate. However, the trial court did not err in utilizing the language of this statute which reflects the law of agency in this state, although additional instructions were available.

¶50. Second, the refusal to grant instruction D-3 was not reversible error when all the instructions are taken as a whole. *Mississippi Transp. Comm'n v. National Bank of Commerce*, 708 So.2d 1, 5 (Miss. 1997). When the questioned instruction is viewed in light of all the other instructions that were given, it is clear that there is no merit to Booker's argument. *See Sumrall v. Mississippi Power Co.*, 693 So.2d 359, 364 (Miss. 1997).

¶51. The trial court stated that it was not going to give a lot of agency instructions and would allow one or two at the most. When confronted with a choice between D-2 and D-3, the court determined that instruction D-2 was clearer and that D-3 was confusing and contained language which was not appropriate.

¶52. The jury's verdict in favor of Pettey was well supported by the evidence in this case. There was more than ample proof that Bobo Insurance Agency was acting for and on behalf of Lloyd's. The jury considered testimony from Bob Jones and Bob Bobo, Jr., as well as the letter from the Bobo Insurance Agency to Lloyd's. The evidence supports the jury's finding that the policy of insurance was canceled by Lloyd's and that the notice given by the Bobo Insurance Agency to Lloyd's was proper and timely given. The verdict was not against the overwhelming weight of the evidence, and the jury was not improperly instructed. Therefore, I would affirm. Accordingly, I dissent.

1. Steven Booker handles claims for Lloyd's and is assigned this claim. It was stipulated that this petition is

properly styled as assigned to him on behalf of Lloyd's.

2. The $95,000 verdict was the difference between the $100,000 coverage provided by the policy less the $5,000 deductible.