**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-60259

HOUSTON COMPRESS, INC.,

Plaintiff-Appellant,

VERSUS

UNDERWRITERS AT LLOYDS, LONDON,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Mississippi
(1:99-CV-24-S-D)
December 6, 2001

Before KING, Chief Judge, and DUHÉ and BENAVIDES, Circuit Judges.

PER CURIAM:[1]

Appellant Houston Compress ("Houston") sued its insurer, Appellee Underwriters at Lloyds, London ("Lloyds"), alleging that Lloyds breached its insurance agreement in bad faith when it denied Houston's claim for physical damage to its building No. 6. At the close of Houston's case in chief the district court granted Lloyd's Motion for Judgment as a Matter of Law, concluding that

---

[1]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

Houston's loss was not covered by the insurance agreement. After careful study of the record, we conclude that issues of fact preclude the Motion. We, therefore, vacate and remand.

FACTS

Houston had for years insured its cotton storage buildings with Lloyds of New York. It is disputed whether this coverage contained a deductible and whether it excluded damage caused by rot.

In 1997 Hollingsworth, a local independent agent who had not represented Houston before, persuaded Houston to let him place the coverage with a company other than Lloyds of New York. Houston agreed on condition that the coverage with the new company be exactly the same as the old coverage. Houston provided Hollingsworth a copy of its 1996-1997 Lloyds of New York policy. Hollingsworth discussed the matter with Phillips, a Lloyds general agent. Phillips contacted Lloyds which issued a binder which allegedly contained a $25,000 deductible for wind damage, a $5,000 deductible for other causes of damage, and an exclusion for damage caused by rot. No policy was ever produced.

Shortly after the binder became effective a water pipe burst in building No. 6 which was one of the insured buildings. At that time Houston noted that a roof support had cracked which may have caused the pipe to burst. This was not reported to Lloyds.

Shortly thereafter, wind damage to another building was reported to Lloyds which assigned Edwards, an independent adjuster, to investigate. Houston then reported to Edwards that building No. 6 had also sustained wind damage. Estimated repair to both buildings was less than $25,000 and Lloyds denied the claim based on the binder's alleged wind damage deductible. Houston then told

2

Edwards that the damage to building No. 6 may have been caused by surface water washing soil away from the roof support causing the roof damage. Houston was informed that this would be flood damage which was not covered.

Some months later Houston reported that the previous damage to building No. 6 was the result of the water line breaking, causing a stream of water to hit a roof support post, moving it from its foundation causing the roof to sag which, in turn, caused water to accumulate on the roof. At trial this was the testimony produced by Houston, but it was contradicted by Houston's earlier answers to written interrogatories. The estimated cost of repair was $20,109. Lloyds hired an engineer to inspect and he concluded that the collapse of the building was the result of rot. Since damage caused by rot was allegedly excluded in the binder, Lloyds denied the claim.

## ANALYSIS

We review de novo grant of motions for judgment as a matter of law at the close of the plaintiff's case in chief, applying the same legal standard as the district court. We consider all evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor. If there is no legally sufficient evidentiary basis for a reasonable fact finder to find for the nonmovant, judgment as a matter of law is appropriate. Texas Beef Group v. Winfrey, 201 F.3d 680, 687-88 (5th Cir. 2000)(citations omitted).

Houston bore the burden to prove that Hollingsworth was Lloyds' agent and, if so, the scope of that agency. These are questions of fact. See Booker ex rel. Certain Underwriters at Lloyd's v. Pettey, 770 So.2d 39, 45 (Miss. 2000); Knight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358

3

(Miss. 1989). The evidence is in conflict as to what Phillips agreed would be the terms of the new policy, and it is in conflict as to what the terms of the old coverage were. Additionally, it is undisputed that Phillips had no contact with Houston. From this evidence contrary inferences can be drawn: Since there was no direct contact a fact finder could conclude that Phillips made no direct express representations to Houston. Or, a fact finder could conclude that by failing to meet with Houston and allowing Hollingsworth to do so, Phillips may have indicated his willingness to allow Hollingsworth to handle the matter. Possibly a fact finder could conclude that the ability to bind Lloyds and even to modify the binder was within the scope of Hollingsworth's apparent authority. See generally Pasco Enters., Inc. v. Southland Ins. Agency, Inc., 408 So.2d 63, 68 (Miss. 1982).

There is also dispute in the evidence concerning the terms of the binder. Houston offered exhibit P-20B which is a single-page document which Houston contends is the binder. It does not contain a wind damage deductible. In fact, it does not describe the insured premises and refers to an allegedly attached quote. Houston attached to its complaint a four-page document which does seem to be the binder and which is in accord with some of the testimony of Mr. Stone as to the terms of the binder he received, but at odds with other of his testimony. The evidence is in dispute as to which document actually represents the agreement of the parties.

Likewise, we find the evidence in conflict as to the cause of the building's collapse, and the extent of the loss, both of which bear on the issue of coverage under the binder.

The district court undertook to resolve the conflicts in the evidence which it indeed could have done at the close of all the evidence. However, it was, in our view error to rule that the evidence at the close of the plaintiff's case in chief, when viewed in the light most favorable to the non-movant, was such that no reasonable jury could find for the non-movant.

4

VACATED and REMANDED.